**Albert Prentice HEARN,**
**Petitioner-Appellee,**

v.

**Barry MINTZES, Respondent-Appellant.**

No. 82–1569.

United States Court of Appeals,
Sixth Circuit.

Argued March 10, 1983.

Decided June 9, 1983.

Frank J. Kelley, Atty. Gen. of Mich., Eric J. Eggan (argued), Lansing, Mich., for respondent-appellant.

Carl Ziemba (argued), Detroit, Mich., for petitioner-appellee.

Before LIVELY and KRUPANSKY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

This is an appeal by Barry Mintzes, superintendent of corrections for the state of Michigan (hereinafter "the State"), from a decision which granted a writ of habeas corpus pursuant to 28 U.S.C. § 2254 upon

the application of Albert Hearn (Hearn), the instant appellee. The present appeal joins the issue of impermissible judicial and prosecutorial comments upon Hearn's failure to testify in his trial for criminal sexual conduct and the preliminary issue of construing a summary affirmance by the Michigan appellate courts when both the merits of the conviction and the petitioner's failure to object at trial to improper comments were presented to the state tribunals.

The events of the underlying incident, as developed at trial primarily through the testimony of Berta Payne (Payne), a white woman who was then 23 years of age, are generally not in dispute. During the early evening of April 23, 1977, Hearn, a black male in his fifties, was with his son in an area of the apartment building where both the appellee and Payne resided. Payne approached Hearn, whom she had casually met on at least two previous occasions, and put her arm around his waist. She received an open invitation from Hearn to visit his apartment for a drink.

Approximately one hour later, carrying her small dog, Payne was observed walking with Hearn toward his apartment while engaging in what appeared to be a friendly conversation. Payne testified that once inside the apartment Hearn mixed her a highball, played recorded music and sexually assaulted her. She further testified that when the appellee finally concluded the assault and she had dressed, she was given a tour of Hearn's apartment and was thereafter escorted by Hearn to the elevator. That night she related the incident to a boyfriend stating that she had been "knocked down", without, however, indicating that any sexual acts had been performed. The next day she told an employer that Hearn had assaulted her in the elevator. Finally, two days after the incident, Payne reported the assault to police but again did not allude to any sexual contact.

In his defense, Hearn, who did not testify in his own behalf, joined the issue of Payne's credibility. To that end, during Payne's cross-examination, the defense introduced into evidence five photographs of

Payne sitting in Hearn's apartment on the night involved. The photos depicted an outwardly relaxed Payne seated in the proximity of a door to the hallway, with a highball in her hand.

During his opening statement, the prosecutor stated:

By its very nature we have a case, you have a trial, you got two stories. You have got to have two stories. One may go unspoken, but there's two stories. It becomes very, very important to judge the credibility of each witness as they testify.

At the conclusion of the trial, when clearly Hearn had not testified but had vigorously contested Payne's testimony through other witnesses, counsel's questioning, and the photographs, the prosecutor returned to the credibility of Payne's "story" in light of Hearn's personal silence:

These facts are uncontroverted. No dispute. No testimony here that says that someone did this or that, and then someone tells you something else.

\*      \*      \*      \*      \*      \*

Look at Berta Payne. Everything she said happened in that room is substantiated by those pictures. They are not in contradiction. The glass, the dog, the chair, the clothes, everything she said happened is right there, not saying that something else didn't happen later. Berta Payne and everything she said about that is totally uncontroverted except for one fact; the fact that the Defendant said, "Hey, nothing happened."

All right, ladies and gentlemen of the jury. Nothing happened. Berta Payne has met a man twice in her life. That is uncontroverted, in fact it's agreed to ... Berta Payne, what she said to you is uncontroverted as to what happened in that room.

The trial judge included the following language in his final instruction to the jury:

It is the theory and claim of the prosecution that Berta Payne was criminally sexually assaulted on April 23, 1977, at Apartment 604 at the Viewpointe Apart-

ments in the City of Grand Rapids, County of Kent and State of Michigan, that the Defendant Hearn assaulted Complainant, Berta Payne, on April 23rd as testified to by Berta Payne over these last two days of trial; *that the testimony of Berta Payne is uncontroverted as to what occurred in the apartment in question on the evening of April 23rd.*

Hearn's defense attorney failed to object to the prosecutor's comments either during opening statement or closing argument, nor did he enter an objection to the Court's instruction to the jury. Hearn was convicted. On appeal in the Michigan courts, however, Hearn challenged the prosecutor's remarks as highly prejudicial. The state appellate tribunal, addressing an alternative State motion to affirm the conviction or dismiss the appeal, entered an order affirming the conviction. The Michigan Supreme Court thereupon refused further appellate review. In the federal habeas proceeding, the district judge initially resolved a perceived "ambiguity" as to the basis of the state appellate decision by applying a "cause" and "prejudice" test before reaching the merits of the writ. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). The instant appeal ensued.

█ In Michigan, the rule is uncontroverted that a criminal defendant's failure to enter a timely objection to allegedly improper remarks by the prosecutor may be relied upon by an appellate court to preclude consideration of the merits on review. *People v. Hall,* 396 Mich. 650, 242 N.W.2d 377 (1976). However, Michigan appellate panels "have long asserted the right to consider manifest and serious errors although objection was not made [at trial] by the party who appeals." *People v. Holmes,* 292 Mich. 212, 215, 290 N.W. 384 (1940). *Accord, People v. Bladel,* 413 Mich. 864, 317 N.W.2d 855 (1982). Therefore, while it is clear that Hearn did not object at trial to those comments now assertedly the basis for the writ, it is also clear that Michigan courts could have elected to address the merits of petitioner's claim notwithstanding the absence of a contemporaneous objection.

The record discloses that Hearn did appeal the merits of the issue arising as a result of impermissible comments of the prosecutor to the Michigan appeals court. The State, in response, urged affirmance of the conviction upon the *alternative* bases of failure of the defense to enter a timely objection, and lack of substantive merit. On August 2, 1978, the Michigan Court of Appeals issued the following order, here set forth in its entirety:

| | |
|---|---|
| PEOPLE OF THE STATE OF MICHIGAN, *Plaintiff-Appellee,* v. ALBERT PRENTICE HEARN, *Defendant-Appellant.* | No. 78-1389 L.C. No. 77-21490-FY |

In this cause the defendant-appellant has filed a brief on the merits in support of his appeal, and the plaintiff-appellee having filed a motion to affirm pursuant to GCR 1963, 817.5(3), and a brief in support of the motion and a brief on appeal and an answer in opposition having been filed, and due consideration having been had by the Court,

IT IS SO ORDERED that the motion to affirm be, and the same is hereby GRANTED, for the reason that the questions sought to be reviewed are so unsubstantial as to need no argument or formal submission.

The district court, without deciding whether the above order was based upon procedural or substantive issues, concluded that the petitioner had satisfied the cause and prejudice test which permitted a federal court to address the merits even if the state dismissal had been granted for procedural reasons.

█ As previously noted, the Michigan appeals court specifically characterized its action as a judgment to "affirm pursuant to GCR 1963, 817.5(3)." That statute provides, *inter alia,* that the State may move the court of appeals to *affirm* or, alternatively, to *dismiss* a criminal appeal for the following reasons:

(2) A motion to dismiss an appeal may be made by appellee on the ground that:

(a) The appeal is not within the jurisdiction of the Court of Appeals, or (b) the appeal was not taken or pursued in conformity with the Rules, or (c) the question or questions sought to be reviewed were not timely or properly raised.

(3) A motion to affirm the order or judgment sought to be reviewed may be made by the appellee on the ground that it is manifest that the question or questions sought to be reviewed on which the decision of the cause or matter depends, are so unsubstantial as to need no argument or formal submission.

Although the State here moved alternatively for affirmance or dismissal, the Michigan court (1) specifically granted "the motion to affirm"; (2) specifically cited to GCR 1963, 817.5(3), which is the section of the statute that addresses the procedure for affirming a judgment upon the merits; and (3) specifically stated "the reason" for its decision in language taken directly from that section of the statute addressing the substantive merits of the appeal. *Compare* (Opinion) "for the reason that the questions sought to be reviewed are so unsubstantial as to need no argument or formal submission"; *and* (statute) "on the ground that * * * the question or questions sought to be reviewed * * * are so unsubstantial as to need no argument or formal submission".

Accordingly, there is no ambiguity as to the basis of this state court decision. It follows that the absence of ambiguity renders superfluous the necessity of presuming that the state court had acted upon a procedural basis. *See e.g. Martinez v. Harris* 675 F.2d 51 (2d Cir.1982). It further eliminates the need for a cause and prejudice analysis.

■ Without questioning the holding of *Harris*, it is self-evident that its application is confined to state decisions which are, as a matter of fact, ambiguous. A proper respect for the integrity of state court decisions, which underlies the federal habeas statute, requires federal courts to discern and accept the foundation for state decisions when that foundation is apparent in the state judgment. In the present case, the merits of the petition are properly at bar solely because they were considered by the Michigan appellate court.

The standard for evaluating allegedly improper prosecutorial comments has been extensively formulated in two recent *en banc* opinions of this Court. In *Butler v. Rose,* 686 F.2d 1163 (6th Cir.1982) (*en banc*), Judge Lively identified the test as follows:

Whether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. This test was derived from the pre-*Griffin* [*v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106] decisions in *Knowles v. United States,* 224 F.2d 168, 170 (10th Cir.1955), and *Morrison v. United States,* 6 F.2d 809, 811 (8th Cir.1925). This test has been applied both in direct appeals and habeas corpus actions. *See, e.g., United States ex rel. D'Ambrosio v. Fay,* 349 F.2d 957, 961 (2d Cir.), *cert. denied,* 382 U.S. 921, 86 S.Ct. 301, 15 L.Ed.2d 235 (1965) (habeas corpus); *United States v. Wells,* 431 F.2d 434, 435 (6th Cir.1970), *cert. denied,* 400 U.S. 997, 91 S.Ct. 475, 27 L.Ed.2d 448 (1971) (direct appeal). Every court of appeals has adopted the test.

\* \* \* \* \* \*

[Moreover, it is incorrect to argue that] a statement by a prosecutor that defendant has put on no proof or no witnesses, or that the state's evidence is uncontradicted, is always impermissible where the defendant is the only person who could have contradicted evidence introduced by the prosecution. To hold that such statements should be automatically treated as unconstitutional comments on the failure of the defendant to testify would be contrary to the teachings of *Lockett v. Ohio,* [438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973] *supra,* where the result turned on circumstances of the trial. As this court, speaking through Judge Jones, recently wrote:

Whether the jury "necessarily construes" a prosecutor's remark as a comment on a defendant's failure to testify requires a probing analysis of the context of the comment, and the likely effect of the district court's curative instruction, if any. *United States v. Robinson,* 651 F.2d 1188, 1197 (6th Cir.), *cert. denied,* 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 183 (1981). *See also Cunningham v. Perini,* 655 F.2d 98, 100 (6th Cir.1981).

686 F.2d at 1170–71 (footnote omitted).

Judge Kennedy further defined the scope of inquiry for reviewing claims of impermissible comments in *Angel v. Overberg,* 682 F.2d 605 (6th Cir.1982) (*en banc*):

The proper legal standard we are to utilize in evaluating alleged misconduct by a state prosecutor is relatively clear. The prosecutor is ordinarily entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel. *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Before habeas relief is granted, the prosecutor's statements must be so egregious as to render the trial fundamentally unfair. *Id.* This determination is to be made by evaluating the totality of the circumstances surrounding each individual case. *Hayton v. Egeler,* 555 F.2d 599, 604 (6th Cir.), *cert. denied,* 434 U.S. 973, 98 S.Ct. 527, 54 L.Ed.2d 463 (1977). Our Court has identified the factors we are to consider in weighing the extent of prosecutorial misconduct in habeas cases.

In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*United States v. Leon,* 534 F.2d 667, 679 (6th Cir.1976).

*Id.* at 607–08.

■ In summarizing these decisions, the following four factors emerge, bearing in mind that a characterization of evidence as "uncontradicted" is not *per se* unconstitutional, *Butler v. Rose, supra:*

1) Were the comments "manifestly intended" to reflect on the accused's silence *or* of such a character that the jury would "naturally and necessarily" take them as such;

2) Were the remarks isolated or extensive;

3) Was the evidence of guilt otherwise overwhelming;

4) What curative instructions were given, and when.

The initial examination mandated by the foregoing decisions is directed to the "manifest intent" of the comments. Essentially, the State contends that the prosecutor's comments were merely intended to respond to the defense claim to the jury that Payne's testimony would be "disputed." The record does disclose that such a promise was tendered by defense counsel during his opening statement, but the context of that remark does not support the State's exegesis that Hearn could be expected to testify.

In fact, Hearn's attorney enumerated for the jury that Payne's testimony would be "disputed" specifically by witnesses who observed Payne and Hearn together in the hallway, through counsel's cross-examination of the prosecutrix, and through the photos which "will tell you about what happened there [in Hearn's apartment]." Significantly, the defendant's own testimony was *not* proferred as one of the sources from which the jury could expect Payne's allegations to be disputed. This case is thus not analogous to *Butler* wherein the prosecutor was held to be simply responding to the defendant's ultimate silence at trial in light of a previous explicit defense promise of testimony. Accordingly, it is evident that the prosecutor clearly intended to join the issue of comment upon Hearn's silence or, at least, that his comments would "naturally and necessarily" be interpreted by the jury as directed to the defendant's silence.

The second factor directs an inquiry into the scope of the remarks. The prosecutor's commentary on the defendant's silence was injected into the proceeding during his opening statement and was deliberately emphasized during closing argument. The remarks were further reiterated by the trial judge.

The third consideration addresses the weight of the evidence against the defendant. A fair reading of the facts does not compel a conclusion that Hearn was unquestionably guilty. The testimony of Payne was, in many respects, inconsistent; other witnesses strongly suggested that Payne knew Hearn and willingly went to his apartment after embracing him in the hall; and the photos of Payne also suggest that she was, at least for some period of time, a willing visitor. Considering the entirety of the evidence presented, it may at least be concluded for purposes of this analysis that it was not overwhelming.

The final factor in evaluating the allegedly prejudicial comments of the prosecutor is the presence or absence of curative instructions, and the timeliness of any such remedy. In the case at bar, no immediate cautionary instruction was given. Moreover, although the trial judge did charge the jury generally on a defendant's privilege not to testify, the judge also informed the jury during his summation of the State's theory of the case "that the testimony of Berta Payne is uncontroverted as to what occurred in the apartment in question on the evening of April 23rd." This judicial repetition of the State's argument that Payne's testimony was "uncontroverted" may well have attributed great weight to that line of analysis for the jury; it certainly did not convey judicial disapproval.

■ Accordingly, on these facts, the improper prosecutorial comments simply cannot be conclusively established as harmless error, and therefore support the granting of the writ as ordered by the district judge. Wherefore, the decision below, except that portion respecting the "cause" and "prejudice" test, is hereby AFFIRMED.