**Michael S. ROSE, Petitioner-Appellant,**

v.

**Jack DUCKWORTH, Superintendent, and Linley E. Pearson, Indiana Attorney General, Respondents-Appellees.**

No. 84–1746.

United States Court of Appeals,
Seventh Circuit.*

Submitted Jan. 4, 1985.

Decided July 29, 1985.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Mark T. Dykstra, Butler, McCanna & Dykstra, Auburn, Ind., for petitioner-appellant.

William Patrick Glynn, III, Deputy Atty. Gen. of Indiana, Indianapolis, Ind., for respondents-appellees.

Before CUMMINGS, Chief Judge, CUDAHY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This appeal from the denial of a petition for habeas corpus involves a claim that prosecutorial misconduct in the petitioner's state trial rendered that trial fundamentally unfair. Petitioner Michael Rose was convicted of dealing in a controlled substance (LSD) after a jury trial in an Indiana state court, and his conviction was affirmed by the Supreme Court of Indiana, with one judge dissenting. *Rose v. Indiana*, 437 N.E.2d 959 (Ind.1982). Rose applied for habeas corpus relief pursuant to 28 U.S.C. § 2254, alleging that the intentional injection of inadmissible, prejudicial testimony by the prosecutor had deprived him of a fair trial. The district court denied his petition, and for the reasons discussed below, we affirm.

## I.

At the beginning of Rose's trial in state court, the trial judge granted a defense motion to bar the prosecutor or any of the state's witnesses (all of whom were police officers or state employees) "from making any reference to" Rose's arrest and guilty plea on a similar but unrelated drug charge in an adjoining county. The trial court granted the motion "as it refers to any buys made after September 22, 1979," the date of the transaction for which Rose was being tried.

During the trial, the prosecutor asked each of his witnesses if he or she was acquainted with the defendant. One witness, Detective Thomas G. Stump, a member of the Indiana State Police, was called to establish a link in the chain of custody of the LSD tablets. Stump had also participated in the arrests of petitioner for both

the offense being tried and the subsequent unrelated charge. In response to the prosecutor's question, Stump testified that he was not personally acquainted with Rose.

Q. Do you personally know, are you personally acquainted with the Defendant in this case, Michael Rose?

A. No, sir.

Q: Have you ever meet [sic] him before?

A. Yes, I have.

Q: How many times, approximately?

A: I've met him twice that I recall.

Q: Would you just briefly describe the circumstances of the two times that you've meet [sic] Mr. Rose?

A: The first time I believe was on December the 6th of last year, 1979. This would've been around 1:00 o'clock in the morning when we had our drug raid and picked up the defendant in the case. Uh, I was assigned the team to go up to his residence and serve the warrant at that time. *The second time was earlier this year when he was arrested again on another drug charge in Steuben County.*

(Emphasis supplied) Defense counsel immediately objected, and the court sustained that objection. The prosecutor commented, "Okay, let's just drop the second time then that you've met the Defendant." At the request of defense counsel, the judge admonished the jury to "disregard that comment." Shortly thereafter, defense counsel requested a mistrial, and that request was denied.

Evidence of Rose's guilt in the drug sale was provided by Jerry Collins, a police officer who had been working undercover at the time he said he purchased the LSD tablets from Rose. Collins described the events of the evening of the sale in detail. Collins testified that only one other individual, Rex Long, had been present for a part of the evening. He also testified that Rose, whom Collins had not previously met, was alone in his car and that it was Rose who initiated the drug sale and produced the LSD tablets. Collins said that after purchasing the tablets he delivered them to his superior and made a report of the events.

Rose testified on his own behalf. His account of the evening's events agreed with Collins's in several respects. He admitted that he had been at the location Collins described and that he was driving a car similar to the one Collins described. Rose said that he had met Rex Long that evening and that Long was accompanied by someone who "could have been" Collins. In contrast to Collins, however, Rose testified that he had had three other individuals—his wife, one of her friends, and Long's brother—in his car. He also testified that no drug sale had occurred or, to his knowledge, could have occurred that evening.

## II.

In affirming Rose's conviction, the Indiana Supreme Court held that prejudice to Rose from the testimony by Officer Stump was not so great that it could not be cured by the trial judge's admonishment. *Rose v. Indiana,* 437 N.E.2d at 961. With respect to the actions of the prosecution, the court stated that "there is no indication that the witness was called solely to wield an evidentiary harpoon," and the court also noted "the absence of any indication of a deliberate interjection of inadmissible evidence." *Id.* The dissenting opinion, however, described a "conscious and deliberate strategy by the prosecution." The purpose of that strategy was, as stated by the dissenting judge, "a deliberate violation of the intent and purpose of the trial court's order." *Id.* at 962 (DeBruler, J., dissenting).

In denying Rose's petition for habeas corpus, the district judge held, without extensive discussion, that the prosecutor's conduct was "no more than harmless error." *Rose v. Duckworth,* 578 F.Supp. 1387, 1390 (N.D.Ind.1984). We believe that the actions of the prosecution in this case merit careful review for the reasons set out in Justice DeBruler's dissenting opinion.

■ Inflammatory, prejudicial statements made by (or in this case elicited by) a state prosecutor, evidencing a desire to improperly prejudice the defendant, may be serious enough to warrant federal habeas corpus relief. *United States ex rel. Clark v. Fike,* 538 F.2d 750, 760 (7th Cir.1976), *cert. denied,* 429 U.S. 1064, 97 S.Ct. 791, 50 L.Ed.2d 781 (1977). In order to rise to the level of constitutional error, prosecutorial misconduct that does not implicate a specific provision of the Bill of Rights must have been "so egregious that it deprived the defendant of a fair trial, thus making the resulting conviction a denial of due process." *United States ex rel. Shaw v. DeRobertis,* 755 F.2d 1279, 1281 (7th Cir.1985). To determine the effect of prosecutorial misconduct, the reviewing court must consider the erroneous acts in the context of the entire trial, and each case must be determined on its own facts. *United States ex rel. Garcia v. Lane,* 698 F.2d 900, 902 (7th Cir.1983).

■ In *Hearn v. Mintzes,* 708 F.2d 1072 (6th Cir.1983), the Sixth Circuit set out four factors to be examined in assessing allegations of prosecutorial misconduct. Although *Hearn* involved allegations that the prosecutor's statements reflected on the defendant's right to remain silent, the factors noted in that case can be applied, with slight modification, to situations where other prosecutorial behavior raises questions about the overall fairness of the proceeding. The factors, modified for this general purpose, are as follows:

1. Were the comments or the actions of the prosecutor intended to reflect unfairly on the defendant's guilt or innocence or were they so prejudicial or inflammatory that they would "naturally and necessarily" imply that the defendant was guilty of the crime charged;

2. Were the remarks or actions isolated or extensive;

3. Was the evidence of guilt otherwise overwhelming; and

4. What curative instructions were given, and when?

*Id.* at 1077.

■ The intentionality of the prosecutor's actions is an element that this court has previously noted as being critical in determining the appropriateness of habeas corpus relief. *See, e.g., United States ex rel. Clark v. Fike,* 538 F.2d at 760. Although the federal courts do not have broad supervisory powers over state courts or their officers, *Donnelly v. DeChristoforo,* 416 U.S. 637, 642–43, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974), intentional injection of unfairness by a prosecutor indicates that individual's state of mind and degree of concern for the rights of the defendant and, in addition, reflects on the likelihood that other instances of unfairness, some of which may not appear on the record, occurred.

■ A determination of intention is a finding of fact that requires making inferences from objective facts and circumstances. *Oregon v. Kennedy,* 456 U.S. 667, 675, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982). Findings of fact by a state court must be given a presumption of correctness by federal reviewing courts. *Sumner v. Mata,* 449 U.S. 539, 543–47, 101 S.Ct. 764, 767–69, 66 L.Ed.2d 722 (1981); 28 U.S.C. § 2254(d). As noted above, the Indiana Supreme Court indicated in two statements that it did not view the prosecutor as having intentionally brought about the challenged testimony. Although the wording of that court's comments raises some question about whether these statements, separately or in combination, are a "finding" that there was no intentional behavior, *see United States ex rel. Johnson v. DeRobertis,* 718 F.2d 209, 210–11 (7th Cir.1983), they are most naturally read as such. Because the petitioner alleges that the prosecutor's error was intentional, we are authorized to review the record to determine if this finding is "fairly supported" by the record as a whole. *Moore v. Duckworth,* 687 F.2d 1063, 1066 (7th Cir.1982); 28 U.S.C. § 2254(d)(8).

■ In the case before us, there is nothing in the record that affirmatively proves

the prosecutor's state of mind. However, the pattern of his behavior invites some suspicion that he was aware of the testimony that would be elicited and that he sought to have it put before the jury. There was no obvious reason for the prosecutor to ask Detective Stump, who had been called to verify the chain of custody of the physical evidence, if he knew the defendant. The question, however, was asked of four other witnesses as well. Therefore, it may have been asked as a matter of routine to rule out any bias, or it may have been part of a planned strategy. There is simply no way to tell. Serious concerns are raised, however, by the prosecutor's continued probing after Stump replied in the negative and again when Stump said that he had met Rose on two occasions. If the prosecutor had thoroughly interviewed his witness prior to trial, he should have been aware that the answer to the follow-up questions could violate the trial court's ruling. If he had not fully prepared and did not know what Stump's answer would be, the prosecutor was risking violation of the court's order and possible infringement of petitioner's rights. His comment, after the objection, that Stump was to "just drop the second time you've met defendant" underscored the event for the jury while appearing to comply with the court. At best, the prosecutor was less than careful; at worst, his actions deliberately invited prejudice. However, the evidence is too inconclusive for us to say that the Indiana Supreme Court's finding is not supported by the record.

The other factor of the *Hearn* test focusing on the actions of the prosecutor does not point to a significant concern in this case. The questioning discussed above is the only instance of possible prejudicial behavior by the prosecutor to be highlighted by petitioner, and it is also the only instance apparent to this court in its review of the record. There was not an extensive pattern of questionable remarks or actions by the prosecution in this trial.

The third and fourth factors of the *Hearn* test shift the focus from the acts of the prosecution to the effect any such misconduct may have had on the jury's determination of guilt. The other evidence of Rose's guilt was perhaps not overwhelming in this case. Collins's testimony was the only evidence implicating Rose as the seller of the LSD tablets. Although Collins was evidently viewed by the jury as a credible witness and the transcript of his testimony presents a fairly full and coherent account of the events, there was no corroborative testimony or physical evidence linking Rose to the crime, other than the tablets which Collins said had come from Rose and that he (Collins) turned over to his superior later on the evening of the sale. In response to a question on cross-examination, Collins testified that Rex Long, who he said was present for part of the evening, was in the Indiana Youth Center at the time of the trial. Defense counsel queried whether that prevented Long from being present to testify, but Collins had no information on that point.

The fourth factor, whether curative instructions were given, supplies the strongest argument in favor of the state's position that the trial was not rendered fundamentally unfair. The trial judge immediately sustained defense counsel's objection and cautioned the jury. The promptness of this caution and the fact that it prevented the jury from learning any other details about the second arrest would have had some curative effect.

On evaluation of all the factors, we find that it is difficult to make a clear ruling on the existence of serious prosecutorial misconduct. The prosecutor's actions may not have been intentional, but they did either carelessly or recklessly ignore the pre-trial orders and the defendant's right to a fair trial. In addition, the other evidence of defendant's guilt was not overwhelming. On the other hand, there were no other instances of prosecutorial misbehavior, and the trial court promptly cut off the improper line of questioning. Since both parties have made arguments on appeal about the prejudicial effect of the erroneous testimony, our decision about the propriety of federal relief will be based on that factor

alone, without further characterization of the prosecutor's actions.

### III.

■ Even if we determined that the actions here indicated serious prosecutorial misconduct, we would have to assess the effect that that misconduct reasonably had on the jury's verdict in order to determine if the petition for habeas corpus should be granted.

■ The district court and the parties on appeal indicate that a harmless error analysis is to be applied. A harmless error analysis is appropriate if a constitutional violation has been established and the government has assumed the burden of proving beyond a reasonable doubt that the defendant would have been convicted absent the violation. *United States ex rel. Burke v. Greer*, 756 F.2d 1295, 1302 (7th Cir.1985). *Burke* involved a claim that misconduct infringed on defendant's Fifth Amendment rights. However, in *United States ex rel. Shaw v. DeRobertis*, 755 F.2d 1279 (7th Cir.1985), this court held that even serious misconduct on the part of a prosecutor would not warrant granting a writ of habeas corpus unless the defendant established that the error had likely changed the outcome of the trial. *Id.* at 1282. In *Shaw*, the prosecutorial misconduct was alleged to be a direct violation of the defendant's due process rights under the Fourteenth Amendment. The distinction between such violations and violations of specific provisions of the Bill of Rights was given as the reason for the different standards for determining prejudicial effect. *Id.* at 1281 n. 1.

Other recent cases from this court dealing with errors that do not implicate specific Bill of Rights protections have either applied a harmless error standard, *see, e.g., Feela v. Israel*, 727 F.2d 151, 154–55 (7th Cir.1984); *United States ex rel. Ross v. Franzen*, 688 F.2d 1181, 1186 (7th Cir. 1982), or used the higher standard embodied in *Shaw, see, e.g., United States ex rel. Garcia v. Lane*, 698 F.2d 900, 903 (7th Cir.1983), without in-depth discussion. In one case the existence of some confusion between the standards was noted. *See United States ex rel. Nance v. Fairman*, 707 F.2d 936, 942–43 (7th Cir.1983) (Cudahy, J., concurring in result).

■ It is not necessary for us to finally determine the correct standard in this case. Even if we were to adopt the lesser (from the defendant's point of view) standard of harmless error, we would not have reason to reverse the district court's denial of the petition. We are convinced beyond a reasonable doubt that the defendant would have been found guilty by the jury even if the erroneous testimony had not been a part of the trial. *Burke*, 756 F.2d at 1302; *United States v. Hasting*, 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981–82, 76 L.Ed.2d 96 (1983).

We note initially that the evidence presented by the state, if believed by the jury, was adequate to overcome the presumption of innocence and to establish Rose's guilt. Rose chose to contradict the state's evidence by presenting his own version of events to the jury. The defense counsel noted in his opening statement that he wished to persuade the jury of a negative—that Rose had not sold drugs to Collins on that night. However, Rose's version of events was not very credible and was not buttressed by any additional testimony or evidence. He made no effort to account for the presence of the LSD tablets turned over to Collins's superior or to indicate any reason Collins might have to frame him, or anyone, to explain the existence of the tablets. On cross-examination, the defense counsel did attempt to raise questions about Collins's ability to identify suspects, but this tactic was largely futile as there was no contention that the crime, if it occurred as Collins said, had been committed by someone else. Thus, there existed legitimate and persuasive reasons for the jurors to doubt Rose, reasons that are independent of their knowledge about another arrest.

With respect to the improper evidence itself, all the jury heard was that Detective

**408**

Stump had been involved "when [Rose] was arrested again on another drug charge in Steuben County." Nothing in that statement alone would have informed the jury that the subsequent arrest was valid or that it ultimately led to a conviction on those other charges. If the jurors were prepared to disbelieve Collins, hearing of another arrest would only confirm their view that Rose was a victim of false accusations. Here, the judge's admonition may have been curative. If it did not erase the information of the arrest from the minds of the jurors, that caution may well have given the jurors reason to believe that there was something wrong or invalid about the arrest.

The effect of the statement on assessments of Rose's credibility is also questionable. Rose did not testify, one way or another, about any additional arrest, so the statement did not contradict anything he said or create any implication drawn from his silence on the matter.

We do not mean to trivialize the potential impact that this statement might have had under different circumstances. Its effect, however, must be viewed in the context of the entire record. Additional examples of misconduct by the prosecutor or testimony that included the fact of conviction on the second charge might well have led us to conclude that the jury would reasonably have been affected by the improper evidence. Standing alone, however, and in view of the other factors mentioned, we determine, beyond a reasonable doubt, that the verdict would have been the same even without the error. There was ample, if not overwhelming, evidence on which to base a finding of guilt; the version of events presented by Collins was considerably more believable; and the improper evidence would not in these circumstances reflect heavily on Rose's credibility or his guilt in the crime being tried. These factors, rather than reliance on the improper evidence, support the jury's verdict. We are constrained to note, however, that if Detective Stump's response had been only slightly more expansive and included the information that Rose had been convicted or that

he had pled guilty in the later case, this analysis would not necessarily be adopted.

We hold that the prosecutor's perhaps unknowing elicitation of improper testimony did not impermissibly influence the determination of the jury, under any of the possible standards for assessing such an effect. Consequently, we affirm the district court's denial of the petition for a writ of habeas corpus.

AFFIRMED.