**Nathaniel CUMMINGS, Petitioner,**

v.

**Jack R. DUCKWORTH and the Indiana Attorney General, Respondents.**

**No. S 87–232.**

United States District Court,
N.D. Indiana,
South Bend Division.

June 26, 1987.

---

Nathaniel Cummings, pro se.

David A. Nowak, Deputy Atty. Gen., Indianapolis, Ind., for respondents.

### ORDER

ALLEN SHARP, Chief Judge.

This petitioner, Nathaniel Cummings, filed a *pro se* petition for relief seeking relief under 28 U.S.C. § 2254. The return filed May 18, 1987, demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982). The state court record has been filed and examined under the mandates of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

This petitioner was convicted in the Criminal Court of Marion County, Indiana, of three counts of robbery, one count of aggravated assault and battery, and one count of physical injury inflicted during the commission of a robbery. Petitioner was sentenced to 15 years on each count of robbery, a sentence of 1 to 5 years on the aggravated assault and battery counts and life on the count for the infliction of physical injury during the commission of a robbery. These sentences and were affirmed by the Supreme Court of Indiana in *Cummings v. State*, 270 Ind. 251, 384 N.E.2d 605 (1979) in a unanimous opinion of Justice Hunter.

The petitioner filed a traverse on June 16, 1987.

The simplest statement of the salient facts are set out by Justice Hunter at 384 N.E.2d 605:

The facts from the record most favorable to the state show that a cleaners was robbed by two men, one of whom was holding a knife. The robbers ordered the store's employee, Jeanne Stevason, to open the cash register and then took the money from the drawer. At this point, another employee, Jeanne Myers, came into the store to begin her shift. The robbers demanded her money and she threw it on the floor. The robbers then forced both women to go to the washroom at the back of the store and lie on the floor. The women were repeatedly hit about the face and head until they told the robbers where to look for additional money.

During the robbery, a customer, Evan Messick, came into the store and walked up to the counter. The robbers demanded her money and then took her billfold out of her hand. She was knocked down and dragged by her hair to the back of the store. She was seriously injured by this assault with a cut through her right eye, both eyes almost swollen shut, hair pulled out on one side of her head, and her dentures and glasses broken. Plastic surgery was later required on her face. At the trial, she identified the defendant as one of the men who robbed and assaulted her.

The petitioner also sought post-conviction relief which was denied and which denial was affirmed by the Supreme Court of Indiana. *Cummings v. State*, 434 N.E.2d 90 (Ind.1982). A second petition was also denied and that denial was also affirmed. *Cummings v. State*, 495 N.E.2d 181 (Ind. 1986).

Here the petitioner raises two exhausted issues: (a) the sufficiency of evidence, and (b) prosecutorial misconduct

In *Jackson v. Virginia*, 443 U.S. 307, 323, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979), Justice Steward speaking for the Court stated:

A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts, as is any judgment affirming a criminal conviction. But

Congress in § 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The federal habeas corpus statute presumes the norm of a fair trial in the state court and adequate state postconviction remedies to redress possible error. See 28 U.S.C. § 2254(b), (d). What it does not presume is that these state proceedings will always be without error in the constitutional sense. The duty of a federal habeas corpus court to apprise a claim that constitutional error did occur—reflecting as it does the belief that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right—is not one that can be so lightly abjured.

There is also an applicable presumption of correctness under 28 U.S.C. § 2254(d). *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Recent progeny on that subject in this subject is also relevant. See *Perri v. Director, Dept. of Correction of Ill.*, 817 F.2d 448 (7th Cir. 1987); and *Bryan v. Warden, Indiana Reformatory*, 820 F.2d 217 (7th Cir.1987).

The evidence here is more than sufficient under the *Jackson v. Virginia* standard to support all these offenses.

During the direct examination of prosecution witness Jimmy Lee Spearman, the deputy prosecutor asked:

Q: Were you charged with the crime of inflicting injury, three counts of armed robber and two counts of aggravated assault and battery in this case?

A: I was.

Q: Were you tried on June 22, 1977, by Deputy Prosecutor Paula Lopossa, in Criminal Court Three?

A. I was.

Q: Did you ever go inside Tuchman Cleaners?

A: No, I never put my feet on the lot.

Q. Did Harvey Cummings take the stand and testify against you?

A: Yes.

Q: In the middle of trial did Deputy Prosecutor Paula Lopossa continue your case to investigate your innocense (sic) or guilt further?

A: I believe she did.

Q: After further investigation was the case against you dismissed?

Mr. Gilroy: I object.

A: That's so.

Mr. Gilroy: Judge, I object to the form of the question. It suggest alot (sic) answers, and its (sic) very improper, sir.

Later, during the cross-examination of Harvey Cummings, the deputy prosecutor asked the following on cross-examination:

Q: You testified at the trial of Jimmy Lee Spearman that you and Nathaniel went in, and that Spearman was either the second or third person to enter, didn't you?

A: The second or third.

Q: Uh huh!

A: I don't remember what I said.

Q: Also at that trial you testified that all three of you, you, Nathaniel and Spearman, were in the cleaners in the presence of those two victims at the same time.

A. I had so much pressure on me I might have said anything. I don't know.

Q: Do you realize Mr. Cummings, Harvey Cummings, that you are under oath when you are testifying?

A: Yes.

Q: Do you realize that what you said could have put what turned out to be an innocent man in prison? for life?

A: Innocent? That man ain't innocent.

Q: Didn't you say to me that you can't remember what you said and that you could have said anything because you were under pressure?

A: That's right.

Q: What about the truth, Mr. Cummings? What about the truth?

A: The truth wasn't important then.

Q: The truth wasn't important at the trial of Jimmy Spearman, a human being?

A: Well, wait a minute. Let me put it to you like this. I talked to the prosecu-

tor, Mr. Morgan, sittin' right there. They gave me a deal so I copped out to ten years in return to testify against Jimmy Lee Spearman.

Q: But are you now saying that you were not telling the truth when you testified at that trial.

A: What I'm saying' is that I don't know what I said at that trial.

Q: Okay. Let's get this straight. You don't know what you said at that trial. Correct? You just said that.

A: I don't remember what I said.

Q: You can't remember, but the truth is not important. You just said that. Is that correct? Answer me.

A: I said the truth wasn't important to me.

Q: At that time, that's right. Because you copped out to a plea and got ten flat. Is that correct?

A: That's right.

Q: That's right. You were willing to say anything to get an innocent person involved, just so that you would get ten years. Wasn't that true?

A: I said, that man wasn't innocent.

Q: You were lying then—

A: If anything I felt that at the trial that I was tryin' to help Spearman.

Q: I want to ask you one more thing. At the trial did you say that all three of you were there in the presence of the two victims Jeanne Stevason and Jeanne Myers?

A: I just told you I don't recall.

Q: You can't recall. You were lying then, Harvey Cummings, and your (sic) lying now.

Mrs. Katz: And I have no further questions to ask.

Mr. Gilroy: Judge, again she commented on the evidence. I move for a mistrial, that's an evidentiary harpoon. She knows that she's not suppose to do that, Judge, and to have a person, a prosecutor, a public official, comment on what this guy is saying, she's not a witness in this matter, she has time to argue this case, yet she wants to argue it now in front of the bench, in front of the jury, in front of everybody. I move for a mistrial. It's ridiculous.

THE COURT: Mistrial is denied. Do you have any redirect?

It is most difficult to see how the information elicited from Jimmy Lee Spearman prejudiced this petitioner.

In regard to the cross-examination of Harvey Cummings, the Supreme Court of Indiana held that any error was harmless, 384 N.E.2d at 607, and this court agrees.

It is beyond dispute that these charges of prosecutorial misconduct must be considered in context of the entire trial. *Rose v. Duckworth*, 769 F.2d 402 (7th Cir.1985).

A recent case on the harmless error standard in this circuit is *United States ex rel. Miller v. Greer*, 789 F.2d 438 (7th Cir.1986), *cert. granted*, —— U.S. ——, 107 S.Ct. 568, 93 L.Ed.2d 573 (1986).

The facts here support the conclusion that any error was harmless beyond a reasonable doubt under *Miller v. Greer*. The reasoning and result of two other cases, each authored by Judge Ripple, support the same conclusion. See *United States ex rel. Bonner v. DeRobertis*, 798 F.2d 1062 (7th Cir.1986), and most recently, *Shepard v. Lane*, 818 F.2d 615 (7th Cir.1987), Part II B at page 621.

There is no basis here for relief under 28 U.S.C. § 2254 and the same is DENIED. SO ORDERED.