**Gregory LENT, Petitioner–Appellant,**

v.

**H. Gary WELLS, Respondent–Appellee.**

No. 87–2121.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 20, 1988.
Decided Nov. 22, 1988.

Ralph C. Simpson (argued), Peter Jon Van Hoek, State Appellate Defender Office, Detroit, Mich., for petitioner-appellant.

K. Davison Hunter (argued), Thomas A. Kulick, Asst. Atty. Gen., Corrections Div., Lansing, Mich., for respondent-appellee.

Before WELLFORD and BOGGS, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

This is an appeal from the district court's denial of a petition for a writ of habeas corpus. Petitioner, Gregory Lent, was convicted of first degree criminal sexual assault by a Michigan jury, and he was sentenced to 10–15 years imprisonment. The Michigan Court of Appeals affirmed the conviction. The Michigan Supreme Court denied Lent's delayed application for leave to appeal.

The issue in this case, whether a criminal accused's privilege against self-incrimination has been violated by the State's indirect reference to his failure to take the stand, is an issue which federal courts too frequently face. Whether particular comments impermissibly accentuate the accused's failure to testify depends upon the context in which they are made. If they do, a reviewing court must consider wheth-

er the degree to which the verdict might depend upon improper remarks is so slight as to constitute "harmless error." For the reasons set forth below, we conclude that the challenged remarks unconstitutionally denied petitioner his right to be free from compulsory self-incrimination, and that the error was not harmless.

## I. Facts

In defense's opening statement, counsel asserted that the State would lack sufficient evidence to convict because no evidence corroborated the complainant's testimony, and because considerable evidence opposing complainant's testimony would be presented. What actually happened during the period at issue could only be known by the complainant and petitioner, whose opening statement indicated that he intended to present evidence of his version of those facts.

The State presented several witnesses, including the complainant. It was established that petitioner had gone to a bar with a friend, where they met complainant and her friend. Complainant and her friend were drinking beer, though they were underage. The four decided to split up and search for a party they had heard of, with petitioner accompanying complainant in her car. Petitioner called the sheriff in an effort to locate the street where the party was supposedly taking place, but they were still unable to find it.

Complainant agreed to drive petitioner home. Petitioner directed her to an abandoned farmhouse and asked complainant to go inside. When complainant refused, petitioner admitted that it was not his house. Complainant voluntarily kissed petitioner twice while at the farm.

Complainant testified that petitioner took possession of the keys to her vehicle, and that she permitted him to drive it so that she could leave the abandoned farm. She asserted that after driving toward town petitioner stopped the vehicle and tried to kiss her. When she resisted, they wrestled and fell out of the car. When petitioner again tried to kiss her, she bit his tongue. She testified that he forcibly pulled off her

pants, and she attempted to flee. He tripped her. He asked that oral sex be performed on him and then attempted to have intercourse. The complainant testified that she consented to oral sex in order to avoid further physical injury. Petitioner then left the area on foot.

A state police officer testified regarding interrogation of petitioner. The officer stated that petitioner's story was similar to that of complainant, except that petitioner stated that complainant agreed to perform oral sex and that he had done nothing to force or injure complainant.

The police noticed an unusually large area of matted grass outside the vehicle. Complainant's purse was found under some weeds. The police officers who transported complainant to the hospital testified that she was upset, but noticed no physical injuries. Medical evidence revealed a scrape on her cheek, but no evidence of semen or sperm in complainant's mouth. Other witnesses observed petitioner leaving the scene. They testified that he was walking casually and did not try to hide or disguise his face from them.

The defense presented no testimony or evidence.

During closing argument the prosecutor noted repeatedly that the evidence was uncontradicted. The prosecutor made the following statements:

1) "The evidence in this case is completely, totally uncontradicted. There are not two types of evidence in this case, there's only one, the testimony of the victim from the witness stand."

2) "Again, did you hear any evidence to the contrary? You heard no other evidence.... [The defense attorney] is going to get up here and say, well, this could've been, and that could've been. Well, could've been didn't take the stand. The evidence that you have is evidence from the witness stand, and not could've been."

3) "Did you hear anybody else get up here and testify? Did you hear anybody else get on the witness stand, one of the other people at the bar, and

say, well, yeah, Pam. She was pretty blasted.... No, there's no other evidence, none."

4) "The evidence shows, ladies and gentlemen, that about 4:00 a.m. on August 6, 1982 that young man right there raped that young lady right there, and there is no other evidence. It's uncontradicted, it's unrebutted."

Defendant's objection to the above remarks was noted without comment. Prosecution's rebuttal argument included the following:

"If [the victim] told you the truth about what happened, the defendant is guilty, and there is no other evidence to contradict what she said.... What she said is evidence that's uncontradicted, and it's backed up. The defense attorney thinks if he says I haven't produced any corroboration often enough you folks might come to believe it. But do we have corroboration? Do we have evidence there was a struggle? He didn't want to talk about it, but you bet we do."

The district court found that the prosecutor's statements were not "manifestly intended" to reflect on petitioner's decision not to testify, and that curative instructions given as part of the charge to the jury corrected any error that might have been committed.

## II. Privilege Against Self–Incrimination

 The fifth amendment provides that "no person ... shall be compelled in any criminal case to be a witness against himself...." It is well settled that direct reference by a prosecutor to a criminal defendant's failure to testify is a violation of the defendant's privilege against compelled self-incrimination. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). When viewing the constitutionality of *indirect* references by the prosecutor to the defendant's failure to testify, this court must examine four factors:

1) Were the comments 'manifestly intended' to reflect on the accused's silence *or* of such a character that the jury would 'naturally and necessarily' take them as such;

2) were the remarks isolated or extensive;

3) was the evidence of guilt otherwise overwhelming;

4) what curative instructions were given and when.

*Hearn v. Mintzes,* 708 F.2d 1072, 1077 (6th Cir.1983); *accord Spalla v. Foltz,* 788 F.2d 400, 404 (6th Cir.1986). The court will not find manifest intent if some other explanation for the prosecutor's remarks is equally plausible. *United States v. Robinson,* 651 F.2d 1188, 1197 (6th Cir.1981). Whether the jury would "naturally and necessarily" construe the comments to reflect on the defendant's failure to testify requires "a probing analysis" of the context of the comments, and the likely effect of the trial court's curative instruction. *Id.*

 A "probing analysis" of the record in this case gives rise to our conclusion that the prosecutor's remarks were manifestly intended to call attention to petitioner's failure to testify, or at least that the remarks would have been so construed by the jury. The State argues that the remarks were intended to address defense counsel's unfulfilled promise in its opening statement that contradictory evidence would be forthcoming, so that the jury would be able to distinguish properly between mere comments and actual evidence. The State further urges that the remarks were not offensive, as witnesses besides petitioner could have provided contradictory evidence.

We find the State's first argument inadequate. While it is a legitimate end for the State to inform the jury that defense counsel's opening statement ought not to be considered as evidence, this prosecutor went too far. Instead of narrowly tailoring his remarks to address defense counsel's statement, the prosecutor here broadly stated more than once that the evidence was uncontradicted. We further observe that, giving defense counsel the benefit of the doubt, he may have made the opening statement in all good faith, intending to put the defendant on the stand, only to decide later when the prosecution rested that its

case was too unsubstantial to require a response.

This case is distinguishable from *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), where the State's reference to its evidence as "uncontradicted" was held to be proper in light of defense counsel's express promise that defendant would testify. In *Lockett*, the Court reasoned that the prosecutor's remarks added nothing to the impression already made by defense counsel. Here, defense counsel did not promise that petitioner would testify and in fact prepared jurors during *voir dire* for petitioner's silence by telling them that petitioner did not need to testify and that their decision was not to be influenced by an election not to testify. The court excused one juror who thought otherwise.

*Butler v. Rose*, 686 F.2d 1163 (6th Cir. 1982) (en banc), is also distinguishable. In *Butler*, a petition for habeas corpus relief based on two prosecutorial comments was denied. In the first comment, the prosecutor noted that the defense attorney must at least present a witness to convince the jury that the complainant was lying.[1] The other statement was clearly focused on the argument and strategy of defense counsel.[2] While two of the comments in question in the case before us were seemingly targeted at defense counsel's statements, the other three were not. The comment that "could've been didn't take the stand" and the remark made during the State's rebuttal addressed defense counsel's speculation as to events and defense's claim that the State lacked corroborating evidence. However, in the context of a trial where three other statements unjustifiably illuminated defendant's failure to testify, these two comments served to draw further attention to a subject that had already been presented impermissibly. Defense counsel here made no promises to present a case; the

jury was not told that defendant would be expected to testify, as it was in *Butler*. Unlike *Butler* and *Lockett*, the prosecutor's comments in this case add significantly to the impression that petitioner's silence was of consequence. Any impression petitioner might unilaterally have given, beyond the inescapable effect of his silence, was minimal.

Similarly, *United States v. Robinson*, — U.S. ——, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988), is not controlling. In *Robinson*, defense counsel argued that the government did not allow the defendants to explain their actions. The prosecutor's comment that defendants could have testified was deemed a proper reference to "the possibility of testifying as one of several opportunities which the defendant was afforded, contrary to the statement of his counsel, to explain his side of the case." *Id.* at 869. Conversely, in the present case, defense counsel makes no assertion that petitioner wished to explain his case or that he was denied the opportunity to do so.

The State's second argument, that no violation has occurred because witnesses other than petitioner could have contradicted the evidence, is equally unconvincing. First, we note that because only the complainant and petitioner were present at the time of the alleged rape, only petitioner could have rebutted the evidence that "about 4:00 a.m. on August 6, 1982, that young man right there raped that young lady right there." If evidence that the prosecutor labels as uncontradicted could only have been contradicted by the defendant's testimony, that label is much more objectionable. *Raper v. Mintzes*, 706 F.2d 161, 165 (6th Cir.1983). We also note in this regard that the evidence was in fact contradicted to some extent by petitioner's police statement which was admitted dur-

---

**1.** The State's Attorney stated, "He cannot do this and just get back and have an attorney say, 'Ah, she is just not telling the truth.' Without producing one witness to show why she might be telling otherwise or *how* she might be telling otherwise." *Id.* at 1167.

**2.** The State's Attorney stated, "Apparently what [defense counsel] is saying is that in a rape case

we are just going to always say it is just made up and put on no proof to show why it was made up or anything to indicate the witness is lying in any way and then you just can't convict, couldn't convict in any rape case." *Id.* Defense counsel's objection was noted, and specific curative instructions were given. *Id.*

ing the State's case in chief. Therefore, the prosecutor's assertion that evidence was unrebutted was not substantiated and would more likely serve to highlight the defendant's failure to take the stand. The State has failed to show an adequate alternate interpretation for the offending comments; therefore, we conclude that as a whole they were manifestly intended to reflect petitioner's silence, and had that effect.

The other three factors set forth in *Hearn v. Mintzes, supra,* also favor petitioner. The five remarks were extensive, not isolated. *See Raper, supra,* at 167 n. 5. Furthermore, one of the remarks was made subsequent to defense objection.

As is hereinafter indicated, we do not feel that evidence of guilt was otherwise overwhelming. Although corroboration of complainant's testimony was not necessary in order for the jury to convict, a single complainant's testimony, which of course the jury was free to disbelieve, is far from overwhelming.

No curative instructions were given at the time of defense's objections. The trial judge generally charged the jury at the end of the trial that a defendant need not testify or produce any evidence, and that the defendant's silence was not to influence their decision. The judge did not mention the prosecutor's improper comments.

III. Harmless Error

■ In *Eberhardt v. Bordenkircher,* 605 F.2d 275 (6th Cir.1979), this court articulated the rule to be applied in determining whether a *Griffin v. California, supra,* error is harmless:

> Harmless error, in the context of a violation of a constitutional right of a defendant, is an extremely narrow standard, permitting the State to avoid the retrial of a defendant only when it can demonstrate beyond a reasonable doubt that the error did not contribute in any way to the conviction of the defendant. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

*Eberhardt* at 278. This court must consider whether this is a case in which, "absent the constitutionally forbidden comments, honest, fair-minded jurors might very well have brought in not-guilty verdicts." *Chapman,* 386 U.S. at 25–26, 87 S.Ct. at 828–29.

Although the State's case was certainly strong enough to permit a jury to find petitioner guilty, it has failed to demonstrate beyond a reasonable doubt that the constitutional error was harmless. In order to find petitioner guilty, the jury necessarily believed that the testimony of complainant, who admittedly lied about her age in order to be served drinks, was credible. The jury must also have doubted the truth of petitioner's police statement, in which he admitted to sexual contact but claimed to have had the complainant's consent. We conclude that the repeated emphasis by the State regarding petitioner's failure to testify might have persuaded the jury to discredit his statement. Other actions of petitioner, such as showing complainant his driver's license early in the evening and making no efforts to conceal himself immediately following the incident, might also be construed by reasonable jurors as evidence of petitioner's innocence. Uncorrected inferences by the State that petitioner should have taken the stand if he wanted to maintain his innocence could easily have persuaded jurors to discount any doubts that may have arisen due to petitioner's seemingly inconsistent actions.

The State has not demonstrated that the error in this case was harmless beyond a reasonable doubt. Accordingly, we reverse the decision of the district court and remand for entry of an order granting the writ of habeas corpus, unless a new trial is commenced within a reasonable time to be determined by the district court.

BOGGS, Circuit Judge, dissenting.

I am in general agreement with Judge Peck's analysis of the violation of the defendant's privilege against self-incrimination. While the prosecutor's remarks were not wholly gratuitous, a careful examination of the factors set forth in *Hearn* persuades me that the remarks did violate defendant's rights, and that the prosecutor

should not have engaged in this line of rhetoric. However, I disagree with the court's harmless error analysis.

An examination of the issue of harmless error always presents a somewhat speculative undertaking. It is always conceivable that any factor may have affected the jury's deliberation. However, over the years courts have developed a number of guideposts in undertaking a task which essentially involves looking into the minds of the jurors to examine the evidence with an eye to whether a decision might have been influenced by impermissible conduct. I agree with Judge Peck's quotation of the standard from *Chapman* as to determining whether this is a case in which "absent the constitutionally forbidden comments, honest, fair-minded jurors might very well have brought in not-guilty verdicts." 386 U.S. at 25–26, 87 S.Ct. at 828–29. For the reasons I will set forth below, I believe that there is no reasonable doubt that the same honest, fair-minded jurors who convicted Lent would not also have convicted him in the absence of the prosecutor's impermissible arguments.

This was essentially a case of the victim's word against the defendant's, but with a number of corroborative physical elements of evidence. The prosecution had the direct testimony of the victim, and there was no question as to the identity of the other party to the events, only as to the exact nature of the events. If the jury believed the complainant, the case was essentially over.

The jury had ample opportunity to observe the victim's demeanor and truthfulness. She was vigorously cross-examined on the obvious grounds of her conduct earlier in the evening, including going to a bar (albeit a campus bar), lying about her age to obtain alcohol, and leaving the bar, taking with her in her car a man she had just met.[1] While these events may have been unwise, they constitute no defense to a charge of rape, if the victim's version of the events is believed.

The victim's version was particularly corroborated by the following physical items:

(1) there was testimony and medical evidence as to physical damage to her face, though defendant's statement, as related by the police, was that he never injured her;

(2) a police officer indicated that, in his opinion, the condition of the grass around the car was more consistent with a struggle than with a consensual sexual encounter;

(3) her ear was ripped and bloody and her earring was missing;

(4) the victim's purse was found under the matted grass outside the car, inconsistent with a consensual encounter; and

(5) the victim's story emphasized that her conduct was motivated by a desire to maintain her virginity, and that virginity was confirmed by medical evidence.

Thus, the prosecution's case was direct and well supported, if the jury found the victim credible. The jurors obviously did, as it would have been easy to return a not-guilty verdict had they had significant doubts as to her version of the events. In short, defendant's decision not to take the stand, and the prosecution's impermissible comments on it, would not seem to add much to the weight of the prosecution's case.

I would agree that this is not a case in which the evidence could be termed "overwhelming," as it might be in some cases with numerous neutral eyewitnesses and scientific identification testimony. At the same time, the harmless error analysis must also focus on the weightiness of the particular error. Comment on failure to take the stand might be more damaging in an alibi defense rather than where, as here, a straight-forward swearing contest is involved. Defendant's version of the events was before the jury through the police officer's statement. His decision not to display his own demeanor to the jury had to

---

1. Her girlfriend and defendant's friend went in defendant's car, all in search of a supposed party. The four young people intended to meet again at the party.

be extremely obvious to the jury independent of any prosecutorial comments.

It is also important to note that the defense attorney's argument to the jury directly contradicted the defendant's statement as relayed by the police officer. According to the police officer, Lent agreed that penetration had occurred, but that it had been wholly consensual and no injury had been inflicted. The defense counsel specifically said in the opening statement that there had been "petting, making out or whatever," with no reference to sexual contact, and that after the victim bit the defendant's tongue because of his persistent advances:

> Greg, probably feeling the effects of the alcohol, as was Miss Thering, overreacted and struck, slapped Miss Thering one time across the right cheek. Following that a scuffle ensued between the two. That is probably when the earring—the injury to the ear. Following the scuffle, Greg got up, and he proceeded to walk along Lincoln Road towards his home.

In other words, the defense opening statement account was completely inconsistent with the contemporaneous account of the defendant as related by the police officer. This inconsistency also makes it much less likely that the jury was motivated by the prosecution's improper remarks rather than by the strength of its case and the implausibility of the defense.

I also wish to comment on the point made in the majority's opinion that the jury would have had to struggle with "doubts" that may have arisen due to petitioner's seemingly inconsistent actions. These actions are presumably the matters referred to at page 977: that defendant had originally shown the victim his driver's license, and that he was seen by others leaving the scene in a casual manner, without trying to conceal his identity.[2] It is true that these pieces of evidence are more consistent with what has become known as "acquaintance rape" than with the more lurid image of a random attack by a stranger on the street

or at home. However, those items of evidence are in no way inconsistent with the victim's version of events, which the jury believed. Neither do they mitigate the ultimate seriousness of the crime.

The fact that there was some evidence which "might also be construed by reasonable jurors as evidence of petitioner's innocence" (page 977) does not terminate the harmless error analysis. In every case, there is *some* evidence which if believed (favorable to the defense) or disbelieved (favorable to the prosecution) could lead to acquittal. The question is rather how those credibility judgments and juror judgments interact with the constitutional violation. In this case, I am firmly persuaded that the jury's analysis of the facts which led to their guilty verdict did not depend on any *additional* discounting of defendant's arguments (offered either through the police or through defense counsel) caused by the prosecutor's "piling on" about the failure to testify.

Finally, I would note that an analysis of cases in which this particular constitutional violation is alleged reveals an almost complete absence of cases in which a conviction has actually been reversed. Out of some 50 cases I have examined in which a constitutional violation was considered, only two convictions were actually overturned. In *Raper v. Mintzes*, 706 F.2d 161 (6th Cir. 1983), this court considered a murderous attack in the home on a recently separated woman, her new boyfriend and two of the boyfriend's children. Only the boyfriend survived. By a 2–1 vote, the court upheld the district court's grant of *habeas corpus* on the conviction for the first degree murder of the defendant's wife, but affirmed the other convictions of second-degree murder of the children and assault with intent to murder the boyfriend. *Id.* at 167. The prosecutor's comments as to the failure to explain what was in the defendant's mind were particularly egregious because of the importance of mental state in first degree murder. *Id.* at 163.

---

**2.** In fact, he was walking on the side of a rural road at 4 A.M. on a cold night with no shirt on. The fact that he did not attempt to conceal himself from passing motorcyclists is hardly a powerful rebuttal of guilt.

In *Hearn v. Mintzes*, 708 F.2d 1072 (6th Cir.1983), the court reversed a conviction in another "acquaintance rape" situation. However, an examination of the facts in that case highlights the differences that would make the error here harmless beyond a reasonable doubt. In that case, the complainant's conduct after the charged events gave reason to doubt her credibility. She told someone the night of the assault that she was "knocked down" with no mention of forced sex; the next day she told her employer that she was assaulted in an elevator; and when she first reported it to the police, she did not mention sexual contact. *Id.* at 1074. The defense also introduced five photographs of "an outwardly relaxed 'complainant' seated in the proximity of a door to the hallway, with a highball in her hand." *Ibid.* The court emphasized that "the testimony of [complainant] was in many respects inconsistent; other witnesses strongly suggested that [complainant] knew [defendant] and willingly went to his apartment after embracing him in the hall." *Id.* at 1078. Thus, the victim was far less credible than in the present case.

Rape under circumstances such as these can easily be disbelieved, and convictions are not easy to obtain. The victim's degree of credibility is demonstrated by the fact that a conviction resulted. *See* Estrich, *Rape*, 95 Yale L.J. 1087, 1143 (1986). In our case, the substantial physical evidence verifying the victim's story of a forceable assault and the contradictions in the defense version of events all point to an error that was harmless here, as opposed to the errors in the two cases above. I would affirm.