922 F.2d 842
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jeffrey MULLINS and William H. Young, Defendant-Appellants.
 Nos. 90-3238, 90-3257.
 United States Court of Appeals, Sixth Circuit.
 Jan. 7, 1991.
 
 Before KENNEDY and MILBURN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 Per Curiam.
 
 
 1
 These appeals, consolidated for argument before this Court, arise from a raid on a "crack house" conducted by the Columbus, Ohio Police Department as part of an investigation into cocaine trafficking in that city. Appellants were tried as co-defendants. Defendant-Appellant Mullins appeals from a jury verdict finding him guilty of conspiracy to possess with intent to distribute cocaine base in excess of five grams. 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(B)(iii), and 846. Defendant-Appellant Young appeals from a jury verdict finding him guilty of possession with intent to distribute cocaine, 21 U.S.C. Sec. 841(a)(1); possession of a firearm during and in relation to a drug trafficking crime, 18 U.S.C. Sec. 924(c); and possession of a firearm by a convicted felon, 18 U.S.C. Secs. 922(g)(1), 924(a)(2).
 
 
 2
 The Appellants collectively challenge the sufficiency of the evidence used to convict them. They also contend that certain remarks made by the prosecutor during closing argument violated their rights under the fifth amendment to the federal Constitution. Appellant Young individually challenges two rulings by the district court denying his post-trial motion to sever and admitting into evidence a statement he made to one of the arresting officers. Finally, Appellant Mullins appeals the district judge's refusal to grant him a four-level sentence reduction under the Sentencing Guidelines for minimal participation.
 
 
 3
 We have reviewed Appellants' arguments and find them unpersuasive. Consequently, for the reasons that follow, we affirm the district court judgment in all respects.
 
 I.
 
 4
 On October 18, 1988, three Columbus, Ohio narcotics detectives met a confidential informant to arrange a purchase of crack cocaine from an apartment at 816 Greenfield Avenue. One of these officers, Detective Cass Long, accompanied the informant to the apartment where they met a young woman named Nita. Nita informed them she had no cocaine; however, she did direct them to another apartment at 665 Van Buren (Van Buren Apartment) where an individual named "Rodney" could provide the drugs. Officer Long and the informant proceeded to the Van Buren address. There they were approached by two black males. Both the Officer and the informant later identified Appellant Mullins as one of these individuals. One of the males then took $25.00 from Officer Long for the drug purchase and went into the apartment. During this time, Officer Long remained outside with the informant and the other male. Shortly thereafter, the individual returned and delivered one loose "rock" of crack cocaine of between 0.6 and 1.1 grams.[1]
 
 
 5
 As Officer Long and the informant began to leave, a third black male came out of the apartment. He identified himself as Rodney and warned the officer to park farther away from the apartment next time because one of his neighbors had threatened to call the police. The informant later identified this individual as Rodney Thomas, the person who rented the apartment. Appellant Mullins and the individual who had delivered the cocaine requested and received a ride with Officer Long and the informant back to the Greenfield Avenue apartment where the purchase initially was to have occurred.
 
 
 6
 Three days later, on October 21, 1988, the Columbus Police Department SWAT team raided the Van Buren Apartment pursuant to a search warrant. As the SWAT team approached, one of the officers in the vehicle remarked that the apartment door was open and people were standing on the porch. However, the door had been closed by the time the team reached it, and a ramming device was used to force entry into the apartment.
 
 
 7
 SWAT officers apprehended Appellant Mullins on the porch of the Van Buren Apartment. When searched, Mullins had no money on his person, but did possess a plastic bag containing 13 "quarter" rocks of crack cocaine. This bag fell out of his right sock. The amount of cocaine totalled 3.25 grams, or approximately 0.25 grams per rock, and was 88% pure. Appellant Mullins stated he had come to the Van Buren Apartment to say hello to Rodney Thomas. At the time, Appellant lived in an apartment around the corner from the Van Buren Apartment.
 
 
 8
 Also during the raid, SWAT officers arrested Appellant Young. Officer Roger Marshall discovered Young lying face-down in the grass in the front yard of the Apartment approximately ten to twelve feet to the right of the front door. Officer Marshall's search of Appellant Young revealed a plastic bag containing eight "quarter" rocks of crack in his left front jacket pocket, a single loose rock of the drug in his right front jacket pocket, and $66.00 cash in his possession. The eight rocks totalled 1.89 grams of cocaine, approximately 0.24 grams each, and were also 88% pure. The single loose rock was .16 grams and 84% pure. Officer Marshall also discovered a .32 calibre chrome-plated, pearl-handled revolver lying in the grass within reach of Young. Despite rain earlier that evening, the gun was wet only on the side lying in the grass.
 
 
 9
 The SWAT team's search of the rest of the Apartment revealed five more rocks of 90% pure crack cocaine base amounting to 3.51 grams--or 0.70 grams per rock--on the kitchen table. Officers also discovered another loaded handgun, a razor blade on a silver platter, and $28.00 in cash. Finally, police found hidden behind a clock a pill bottle containing 20 larger rocks ("$100 rocks") which one of the detectives testified could be chipped-down by sellers into smaller sizes for sale. This batch of crack was 18.68 grams--0.93 grams per rock--and was 89% pure.
 
 
 10
 SWAT officers also apprehended two other individuals inside the apartment. One of these men had $1,200 in his possession, the other possessed $1,297. Both these individuals were indicted but remained at large at the time of trial. Approximately one hour after the search began, Rodney Thomas returned to the Apartment and was arrested. Thomas was also indicted but pleaded guilty prior to trial.
 
 
 11
 On September 14, 1989, the grand jury returned a five-count indictment charging Mullins and Young, among others, with conspiracy to possess with intent to distribute more than 5 grams of cocaine base, 21 U.S.C. Sec. 846; and charging Young individually with possession with intent to distribute more than 5 grams of cocaine base, 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(B)(iii), as well as with the previously enumerated firearms offenses.
 
 
 12
 At trial, the prosecution offered testimony concerning the facts and circumstances surrounding the arrest and search of each of the Appellants as well as the identification testimony connecting Appellant Mullins to the controlled purchase made on October 18. Additionally, one of the detectives testified, based upon his experience, that the quantities of cocaine Mullins and Young each possessed were consistent with them being street dealers, or "geekers," of the drug.
 
 
 13
 At some time during his arrest, Appellant Young explained that he had come to the Van Buren Apartment with Mullins, his common law brother-in-law. He also told Officer Malloy that he had been unemployed for some period of time prior to October 21, 1988. The United States' Attorney failed to disclose this latter statement to Young's defense counsel prior to trial. Consequently, the district court held an evidentiary hearing and determined the statement had been voluntarily made and was not intentionally withheld. On this basis, the court admitted the statement into evidence.
 
 
 14
 At the close of the government's case, both Mullins and Young moved the court for judgments of acquittal. The court denied Mullins' motion; however, it granted Young's motion limited to the conspiracy charge (count one) and the charge of possession with intent to distribute in excess of 5 grams of cocaine (count three), as to the quantity, after finding no evidence of an amount in excess of 5 grams. The court did allow the jury to consider the lesser included offense of possession with intent to distribute fewer than 5 grams.
 
 
 15
 Neither Appellant testified in his own behalf, and neither presented any witnesses to challenge the government's evidence. During closing argument, the Assistant United States Attorney made the following comment concerning Appellant Mullins:
 
 
 16
 Have you heard any testimony that the cocaine that he had on his person on the 21st was for personal use? No. As a matter of fact....
 
 
 17
 The court sustained an objection by Appellant Mullins' counsel and instructed the jury to disregard the statement. Later, the prosecutor made the following statement concerning Appellant Young's case:
 
 
 18
 Mr. Reed [Young's counsel] would have you draw the inference that this was for personal use. He doesn't explain to you how someone who told the police that he was unemployed came to have enough money to buy $225.00 worth of crack cocaine.
 
 
 19
 The court overruled Mr. Reed's objection to this remark. Finally, before retiring the jury, the court properly instructed that no defendant may be compelled to testify in a criminal trial, and that the jury could not draw an inference of guilt from either defendant's failure to testify.
 
 
 20
 The jury returned verdicts of guilty against the Appellants on all counts. At that time, both Mullins and Young moved for new trials based upon the prosecutor's remarks in closing argument. The court denied these motions.
 
 
 21
 At sentencing, Mullins called Rodney Thomas to testify to having known the Appellant since 1982. Thomas also testified he rented his apartment for use as a crack house to two other individuals, neither of which was Appellant Mullins. Thomas stated that, to his knowledge, Mullins was not involved with these individuals, and he further indicated that he knew of no one other than the two individuals who participated in the cocaine sales, and he denied participating in the sales himself. On cross-examination, Thomas testified that he had been gone from the apartment for at least one day and was unaware of what occurred while he was away, but he confirmed that the dealers operating out of his apartment had previously been dealing from 816 Greenfield Avenue.
 
 
 22
 Both Appellants Mullins and Young objected to the failure of the probation department to treat them as a minimal participants rather than as minor participants in their respective offenses and the resulting failure to award them four-level decreases in sentence under section 3B1.2(a) of the Sentencing Guidelines. The district court overruled these objections. Appellant Mullins received a 78 month sentence with a four-year period of supervised release to follow. Appellant Young received a sentence of 132 months to be followed by five years of supervised release. Appellants thereupon filed timely notices of appeal.
 
 II.
 
 23
 A. Denial of Motions for Judgment of Acquittal
 
 
 24
 Both Appellants Mullins and Young contend the district court erred in denying their motions for acquittal, asserting the government failed to present sufficient evidence to prove their guilt beyond a reasonable doubt. In reviewing a denial of a motion for judgment of acquittal, we must determine
 
 
 25
 whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.... Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.
 
 
 26
 Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Johnson v. Louisiana, 406 U.S. 356, 362 (1972). Accord United States v. Adamo, 742 F.2d 927, 932 (6th Cir.1984), cert. denied, 469 U.S. 1193 (1985).
 
 
 27
 Appellant Mullins was charged with conspiracy to possess with intent to distribute in excess of 5 grams of cocaine base. Mullins concedes the jury could infer he knew what was going on in the Van Buren Apartment at the time he was arrested; however, he contends the jury could not properly infer he received the crack from the apartment because the drug was readily available in the community. Mullins maintains the inference was further undermined by the testimony of a DEA chemist that no reliable test could determine whether a portion of crack came from a particular batch. Finally, Appellant further contends the government failed to establish intent to distribute by excluding the possibility that Mullins possessed the narcotic for personal use.
 
 
 28
 These arguments provide no assistance to Appellant Mullins. The evidence provided by the government need not exclude every reasonable hypothesis except that of guilt. Adamo, 742 F.2d at 932; United States v. Prieur, 429 F.2d 1237, 1238 (6th Cir.1970). Moreover, the government receives the benefit of all reasonable inferences that may be drawn, even from purely circumstantial evidence. Prieur, 429 F.2d at 1238. Appellant Mullins was apprehended at the doorway of what he knew to be an operating crack house. Concealed on his person, he was carrying a packet containing 13 "quarter" rocks of crack--a parcel similar to those carried by street dealers in the drug. Moreover, the purity of the crack in Appellant's possession closely coincided with that of crack found inside the house. The jury could reasonably infer that Mullins' "quarter" rocks were chips off the "$100" blocks discovered hidden behind the clock, and that Mullins received them from this source.
 
 
 29
 Moreover, the identification evidence placing Appellant at the Van Buren Apartment at the time of the controlled purchase on October 18th reinforces the foregoing inferences. The Appellant challenges the reliability of these identifications based upon inconsistencies between them.[2] Appellant Mullins' arguments merely raise other possible interpretations of the facts and challenge the credibility of witnesses, areas within the province of the jury. Jackson, 443 U.S. at 319. It remains that, viewing the evidence in the light most favorable to the government, the jury could properly infer that Mullins knew the crack house operators, that they supplied him with the crack, and that he resold it on the street for them. On this foundation, a juror could conclude beyond a reasonable doubt that Appellant Mullins was guilty of the conspiracy charge. Therefore, the court did not err by denying Appellant's motion for acquittal.
 
 
 30
 Appellant Young was charged with possession with intent to distribute crack and with two firearms offenses: possession in connection with a drug trafficking offense and possession as a convicted felon. He contends that once the court acquitted him of the conspiracy charge, the only evidence suggesting he intended to distribute crack was his bare possession of the drug. As did his co-Appellant, Young suggests that the quantity of the drug he possessed equally supported an inference of personal use. We find this argument unpersuasive for the same reasons discussed above. Furthermore, the government also produced Young's own statement that he was and had been unemployed for some time at the time of his arrest.[3] The jury could infer that the amounts of drugs and cash Young possessed, $225.00 worth of crack and $66.00 cash, were substantial for an unemployed individual.
 
 
 31
 Additionally, evidence indicated the handgun found in the grass was wet only on the side in the grass in spite of the rain that had fallen earlier that evening. This fact, coupled with the proximity of the weapon to the Appellant, would permit the jury to infer that Young kept the gun to protect his investment and quickly tossed it away when the SWAT team began to raid the Apartment. "Actual possession of a firearm need not be shown ..., only that the firearm was under the defendant's control and readily accessible." United States v. Pearce, 912 F.2d 159, 162 (6th Cir.1990) (Defendant's ability to reach visible handguns and matching ammunition in his pocket supported inference that defendant controlled weapons to be used for protection during drug-related transactions). Because this evidence would also permit a juror to find the Appellant guilty beyond a reasonable doubt, the district court correctly denied Appellant Young's motion for judgment of acquittal.
 
 
 32
 B. Fifth Amendment Analysis of Prosecutor's Comments
 
 
 33
 Twenty-five years of review before the federal courts have well established the rule that direct prosecutorial commentary upon a criminal defendant's failure to testify at trial violates the fifth amendment by penalizing the defendant's exercise of his constitutional privilege against self-incrimination. United States v. Robinson, 485 U.S. 25, 30 (1988) (citing Griffin v. California, 380 U.S. 609 (1965)); Chapman v. California, 386 U.S. 18 (1967); accord Lent v. Wells, 861 F.2d 972, 975 (6th Cir.1988), cert. denied, -- U.S. ----, 109 S.Ct. 1577 (1989). Where such direct comments are at issue, the court applies a test for harmless error. Chapman, 386 U.S. at 22. However, the case before us presents no such direct references. The prosecutor's remarks concerning the lack of testimony supporting the Appellants' assertions of possession for personal use alluded to the Appellants' failure to testify only circumspectly.
 
 
 34
 This Court applies four factors to determine whether such indirect references by the prosecutor to a defendant's failure to testify violate the fifth amendment. Lundy v. Campbell, 888 F.2d 467, 478 (6th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 2212 (1990); Lent, 861 F.2d at 975. Specifically, we must examine whether the comments were "manifestly intended" to highlight the defendant's silence or such that they "naturally and necessarily" led the jury to view them in this manner; the extensive or isolated nature of the comments; the existence and strength of other evidence of guilt; and whether curative instructions were given, and when. Lent, 861 F.2d at 975 (citing Hearn v. Mintzes, 708 F.2d 1072, 1077 (6th Cir.1983)). In the present case, the comment concerning each Appellant's case was isolated solely to the passage quoted earlier in section I, and the district judge took timely corrective action. After review, we cannot say either remark was manifestly intended to reflect on the Appellant's silence because an equally plausible alternative explanation exists to justify each of the statements. United States v. Robinson, 651 F.2d 1188, 1197 (6th Cir.), cert. denied, 454 U.S. 875 (1981); accord United States v. Rochan, 563 F.2d 1246, 1249 (5th Cir.1977).
 
 
 35
 In Appellant Mullins' case, the government argues the remark was intended to draw attention to the fact that other logical sources for the testimony were available, such as a health care professional or family member. This justification is plausible. Moreover, the district court immediately sustained defense counsel's objection and instructed the jury to disregard the remark. We conclude this prompt response cured any prejudicial effect the statement might have carried and properly safeguarded Appellant Mullins' fifth amendment rights.
 
 
 36
 In Appellant Young's case, the prosecutor's remark was more attenuated, referring to the defense attorney's failure to present evidence explaining how his unemployed client came to possess $225.00 worth of crack. Cf. Robinson, 651 F.2d at 1197-98 (No fifth amendment violation found where prosecutor remarked upon defense counsel's inability to impeach a key witness' testimony despite extensive cross-examination). The statement does not appear manifestly intended to cast aspersions upon the Appellant's failure to testify, nor must the jury naturally and necessarily have taken it as such because evidence of alternative sources of income could have come from a variety of places including records of a savings account or public assistance, or the testimony of a personal lender. Furthermore, the court reiterated in its instructions to the jury that no inference was to be drawn from the Appellants' failure to testify. Appellant Young shared equally with his co-defendant in the benefit of this instruction. We find no violation of the fifth amendment in these circumstances.
 
 III.
 A. Denial of Motion to Sever
 
 37
 Appellant Young argues that his trial alongside Appellant Mullins after Young's acquittal of the conspiracy charge irreparably prejudiced him because he suffered the "spill-over" from testimony admitted against Mullins. Specifically, he asserts that testimony concerning the crack house operations was wrongfully used to indicate Young's intention to distribute the crack where no extrinsic evidence existed to support this claim. Young further contends that the government joined his case with Appellant Mullins' in bad faith, charging Young with conspiracy purely to insure the defendants were tried together.
 
 
 38
 Appellant Young relies exclusively on Rule 8(b) of the Federal Rules of Criminal Procedure. This Court has recognized that a defendant waives his rights under Rule 8(b) of the Federal Rules of Criminal Procedure by failing to raise a motion for severance prior to trial. United States v. Hatcher, 680 F.2d 438 (6th Cir.1982); see also United States v. Rox, 692 F.2d 453, 454 (6th Cir.1982) ("A defendant must move for severance based on misjoinder before trial or waive the objection. Fed.R.Crim.P. 12(b)(5)."). Accord United States v. Parson, 452 F.2d 1007, 1008 (9th Cir.1971). Here, Young did not raise his motion prior to trial, offering instead a post-trial motion for a new trial. Under Hatcher and Rox, Young has waived his rights under Rule 8(b) and may not challenge the joinder in this Court.
 
 
 39
 Young did not assert a claim for severance under Rule 14 of the Federal Rules of Criminal Procedure. Therefore, whether the district court abused its discretion by refusing to sever for prejudice is not before us. E.g., Rox, 692 F.2d at 454. Moreover, the district court in the present case instructed the jury that it was not to consider Young as part of the conspiracy, and that it was to consider each count of the indictment and the charges against each defendant separately. Thus, the court committed no error in denying Appellant Young's motion for a new trial.
 
 
 40
 B. Admissibility of Appellant Young's Statement to Officer Malloy
 
 
 41
 In the afternoon of the first day of the trial, the prosecutor notified the court and Appellant Young's attorney for the first time of the existence of a statement by the Appellant acknowledging his unemployment to one of the officers conducting the raid on the Van Buren Apartment. The court granted a recess and scheduled a hearing on the matter for the following morning. The government originally identified the officer as Officer Tulloch, but corrected this at the outset of the hearing, identifying Officer Malloy as the person who received the statement. Appellant Young contended to the district court that the government's untimely disclosure of this statement to Officer Malloy at trial both violated the rules of discovery and prejudiced Young in the preparation of his case because he could not properly have constructed a motion to suppress had he chosen to do so.
 
 
 42
 The district court rejected these arguments and admitted the statement, finding that the government had not intentionally withheld the statement and that Young voluntarily made the statement after Officer Malloy advised him of his Miranda rights. On appeal, Young contends that the district court's ruling was in error and should be set aside because the evidence was not innocuous as the government had represented in its argument for admissibility, but was quite significant because it provided "the most substantial basis from which the jury could draw the inference of defendant's intent to distribute." Thus, Young contends, the prejudice arising from the statement was "overwhelming."
 
 
 43
 Rule 16(d)(2) of the Federal Rules of Criminal Procedure governs the regulation of a party who fails to comply with a discovery request. The rule provides that upon notice of such a failure to comply, the court "may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances." Fed.R.Crim.P. 16(d)(2). Clearly, Rule 16(d)(2) gives the district judge discretion in handling discovery matters. We must assess whether the court below abused that discretion by admitting Appellant Young's statement. United States v. Bartle, 835 F.2d 646, 649-50 (6th. Cir1987), cert. denied, 485 U.S. 969 (1988).
 
 
 44
 The district judge held a full evidentiary hearing in which Young's attorney had the opportunity to cross-examine Officer Malloy to test the circumstances under which the statement was made. Appellant Young admitted in his testimony that he made the statement after Officer Malloy read him his Miranda rights. Although Appellant's attorney argues prejudice, he does not indicate that the statement could have or would have been excluded if the government had disclosed it in a timely fashion. Nor does he contend that timely disclosure of the statement would have permitted him to soften any prejudicial effect. While the statement may carry some prejudicial impact, it also clearly possesses a high degree of probative value making admission proper under Rule 403 of the Federal Rules of Evidence.
 
 
 45
 In Bartle, we found a second basis to affirm the district court's admission of challenged evidence in the appellant's failure to pursue a less severe remedy than suppression. Bartle, 835 F.2d at 650; accord United States v. Kubiak, 704 F.2d 1545 (11th Cir.), cert. denied, 464 U.S. 852 (1983). Appellant Young likewise failed in this respect. The record indicates that Appellant's counsel did not use the overnight recess granted by the court to prepare to examine Officer Tulloch. Thus, Appellant was not prejudiced by the subsequent identification of Officer Malloy. Even if such prejudice was evident, Appellant's counsel neglected to seek a continuance or a longer recess to recover from the surprise, entering only a motion to suppress. For these reasons, we conclude the district court did not abuse it discretion by admitting Appellant Young's statement to Officer Malloy.
 
 IV.
 
 46
 Appellant Mullins challenges the district court's refusal to grant him a four-level sentence reduction for minimal participation in the crime pursuant to section 3B1.2 of the Sentencing Guidelines,[4] under which he was sentenced. This Court reviews the findings of the district court in a guideline sentencing hearing under a clearly erroneous standard, giving ample regard to the district court's opportunity to assess the credibility of the witnesses and due deference to the district court's application of the guidelines to the facts. 18 U.S.C. Sec. 3742(e); see also United States v. Anders, 899 F.2d 570, 580 (6th Cir.), cert. denied, --- U.S. ----, 59 U.S.L.W. 3392 (U.S. Nov. 27, 1990) (No. 90-6016) ("A defendant's status as a minimal or minor participant is a factual finding which is protected by the clearly erroneous standard.").
 
 
 47
 The commentary to section 3B1.2 of the Guidelines states that the 4-level decrease for minimal participation is "intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group," and indicates that the individual's lack of awareness of the scope or structure of the criminal enterprise or of the conduct of the others involved is evidence of minimal participation. U.S.S.G. Sec. 3B1.2, comment (n. 1). The evidence at trial indicated that Mullins was at least present at the Van Buren Apartment when the controlled purchase was made, was present again at the door of the apartment at the time of the raid, and was apprehended in possession of a quantity of crack consistent with his role as a street dealer.
 
 
 48
 The district court observed that the jury found Appellant guilty of conspiracy and, therefore, had to find he had the intent to participate in the enterprise. The court found the sentencing hearing testimony of Rodney Thomas insufficient to disturb this finding. Indeed, the district court expressed its view that the two-level reduction for minor participation it granted Appellant pursuant to the probation officer's recommendation was "generous." We cannot say the district court's adherence to the jury's conclusion and the probation officer's report in this case leaves us with a definite and firm conviction that the lower court made a mistake. Anderson v. Bessemer City, 470 U.S. 564, 573 (1985). The court did not err in denying the four-level sentence reduction.
 
 V.
 
 49
 For the foregoing reasons, we AFFIRM the district court judgment in all respects.
 
 
 
 [1]
 Police attributed the discrepancy in the amount to the difference between the scales used in the lab and those in the property room
 
 
 [2]
 The first of these identifications came from Officer Long. Officer Long did not participate in the October 21 raid because he was then operating in an undercover capacity. However, he testified on direct examination that he identified Appellant Mullins as one of the individuals he met with the confidential informant outside the Van Buren Apartment on October 18, 1988. Specifically, he identified the Appellant as the person who had waited outside with him and the informant. He testified he made this identification at some time after the raid from photographs taken at the raid. On cross-examination, he expressed that he was "pretty sure" he had made this identification
 The second identification came from the confidential informant. This informant had died prior to trial, but on cross-examination by Appellant Mullins' attorney, Officer Paul Tulloch testified to a statement he received from the informant. The officer testified that the informant also identified Mullins from photographs taken at the raid. However, in contrast with Officer Long's testimony, the informant identified Mullins as having been inside the Van Buren Apartment on October 18. Appellant Mullins challenges the reliability of these identifications based entirely on this discrepancy.
 
 
 [3]
 In section III, B., infra, we review and affirm the district court's ruling admitting this statement
 
 
 [4]
 Appellant Young also raised an objection on this ground at his sentencing hearing. However, he does not pursue this issue on appeal