107 F.3d 12
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Beauford MARTIN, Petitioner-Appellee,
v.
Jesse RIVERS, WARDEN, Respondent-Appellant.
 No. 95-2210.
 United States Court of Appeals, Sixth Circuit.
 Feb. 03, 1997.
 
 Before: KENNEDY, BOGGS, and WOOD, JR.,[1] Circuit Judges.
 PER CURIAM.
 
 
 1
 Following his conviction of first degree felony murder and related felonies by a jury in 1990, petitioner appealed unsuccessfully to the Michigan Court of Appeals. Thereafter, in 1993 the Michigan Supreme Court denied review. Petitioner then filed this petition for habeas corpus in the district court, claiming the prosecutor's misconduct had denied him a fair trial. Rejecting the Magistrate's Report and Recommendation to the contrary, the district court granted the writ.
 
 
 2
 The parties agree that the issue is whether certain of the prosecutor's remarks during trial were so egregious as to be fundamentally unfair, justifying the granting of the writ of habeas corpus.
 
 
 3
 Only a brief factual background is necessary for these purposes and is taken primarily from petitioner-appellee's recitation of the facts. In 1989 a group of people, including the petitioner, pooled their money in order to buy cocaine. The petitioner allegedly arranged to buy the drugs from a man named Wiley who, after he received the drug money, handed over two packages of brown sugar instead of cocaine. The trouble began when several of the unhappy money losers started searching for Wiley, seeking the return of their money. The evidence suggests that the group, travelling in cars, visited four locations in Detroit known to be houses of relatives or friends of Wiley. At one of the houses which Wiley was known to frequent, they found only one occupant home, Robert Williams. Petitioner allegedly threatened Williams with a gun in an effort to find Wiley but to no avail. The group warned Williams they would come back the next day and kill the Williams family if Wiley was not found.
 
 
 4
 The next day, as promised, petitioner, along with two codefendants and five others, returned to the Williams house, gained admission, and again asked for Wiley. As stated in petitioner's brief, this is what happened next:
 
 
 5
 Co-Defendant James Mitchell ordered a black male to shoot Robert Williams in the leg. This was done. Co-Defendant LaTonya Hobson, began to beat Debra Williams with a baseball bat. Mrs. Williams was also shot. Dennis Newsome was also shot and later died. Before leaving, co-Defendant James Mitchell ordered another man to shoot Mr. Williams in the other leg. This too was done.
 
 
 6
 The codefendants are not involved in this appeal. It is petitioner's view of the evidence that he was not identified as the one who "did any of the shootings, beatings, or the ordering about." The prosecution proceeded on the theory, however, that petitioner was an aider and abettor in the crimes, and petitioner was convicted.
 
 
 7
 In ruling on the petition for habeas corpus, the district court found petitioner's complaints about the prosecutor's conduct to be meritorious, and held that they resulted in a denial of petitioner's right to due process and a fair trial. The district court thus issued the writ, and respondent has appealed.
 
 
 8
 We review decisions to issue or deny a writ of habeas corpus de novo. Turpin v. Kassulke, 26 F.3d 1392, 1395 (6th Cir.1994). Unless the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process," Darden v. Wainwright, 477 U.S. 168, 181 (1986), or was so egregious as to make the entire trial fundamentally unfair, see Serra v. Michigan Dep't. of Corrections, 4 F.3d 1348, 1355 (6th Cir.1993), a writ of habeas corpus should not be issued.
 
 DISCUSSION
 
 9
 In granting the writ, the district court made these pertinent comments:
 
 
 10
 THE COURT: ....
 
 
 11
 And I think on the law and the facts as they've been presented to me, I'm going to have to grant the writ and require a new trial within 60 days--
 
 
 12
 MS. JACOBS: Thank you, Judge.
 
 
 13
 THE COURT: --of this defendant. It is a terrible offense. And in all likelihood, he will be convicted again. But the judge's efforts here clearly did not override the prosecutor's determined prejudicial and a [sic] inflammatory argument.
 
 
 14
 The vouching was not really corrected if the prosecutor was able to return to it with even greater force then the first statement.
 
 
 15
 The comment on silence was a comment on silence, so [to say] I cannot comment on the defendant's silence is to call attention to it.
 
 
 16
 And although there was no objection, that may well have been plain error. And although the court later, I'm sure, gave the instruction that no defendant has--she did give the instruction.
 
 
 17
 MS. JACOBS: Yes.
 
 
 18
 THE COURT: The jury had still been called to note that the prosecutor wasn't allowed to mention the fact this defendant didn't testify.
 
 
 19
 The signature on the lineup sheet. She misused the signature and even after the attempt at correction.
 
 
 20
 I think that although the judge was diligent in attempting to control this prosecutor, the woman still got in her prejudicial strokes in this argument.
 
 
 21
 And it's too close a question as to whether this trial was fundamentally unfair because of that argument to deny the writ. So I have to grant a new trial.
 
 
 22
 We will briefly discuss the arguments and comments of the prosecutor which the court found sufficient to warrant granting the writ.
 
 
 23
 First, the prosecutor made some comments about Robert Williams, who testified for the state as an eyewitness to the shootings. She argued that Williams was "your basic honest witness." Defense counsel objected and the objection was sustained. The prosecutor, however, made a subsequent comment about the witness being "quite honest." Another objection was sustained and the trial court gave a curative instruction, advising the jury that arguments of counsel were not evidence and that the prosecutor could not vouch for the veracity of a witness. See United States v. Carroll, 26 F.3d 1380, 1387 (6th Cir.1994); United States v. Dandy, 998 F.2d 1344, 1353 (6th Cir.1993). The petitioner agrees that one instance of witness vouching does not always constitute reversible error, but in the factual circumstances of this case, he argues it does. The petitioner dismisses the curative instruction and characterizes it as "very mild, almost perfunctory."
 
 
 24
 We view the prosecutor's vouching as minimal and any error fully remedied by the court's curative instruction. The prosecutor, for instance, did not try to put the prestige of her office behind the comments or claim that she personally knew that Williams was honest. See Carroll at 1388-89.
 
 
 25
 Second, the petitioner argues that the prosecutor improperly appealed to the fears of the jurors by labelling the group of eight who came to the Williams house as a "lynch mob." That was objected to as inflammatory, and the objection was sustained. The prosecutor was permitted, however, to refer to the group as a "mob." "Mob" is a term generally used to refer to a large disorderly crowd of people.
 
 
 26
 Eight belligerent people in the Williams house could fairly be labelled a mob and their disorderly conduct, including shooting, beating, and killing, was sufficient to fit the definition. The further use of the word "mob," not "lynch mob," in these circumstances, and to which the petitioner did not object, was not error. The term was not prejudicially descriptive of the petitioner's group.
 
 
 27
 Third, the petitioner argues that the prosecution, also in argument, misstated the elements of felony-murder in Michigan by not specifically mentioning the element of "malice." See People v. Aaron, 299 N.W.2d 304 (1980). Petitioner did not object to the prosecutor's comments, see Wainwright v. Sykes, 433 U.S. 72, 84-85, 86-87 (1977) (holding that failure to comply with a state procedural rule governing the timely presentation of federal constitutional claims can operate as a bar for habeas corpus relief absent a showing of cause and prejudice), but in any event the trial court correctly and fully instructed the jury on the statutory elements of the Michigan crime. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).
 
 
 28
 Petitioner also claims that the prosecutor argued that Debra Williams, wife of Robert Williams, identified petitioner. That does not appear to be accurate, but petitioner did not object. Petitioner concedes, however, that Debra Williams did identify petitioner's codefendant in a photo spread. In the context of the case and considering the court's clear instructions that attorney arguments are not evidence, we do not find the prosecution's unobjected-to misstatement to be sufficient grounds to issue the writ. See Wainwright v. Sykes, 433 U.S. 72, 97 (1977).
 
 
 29
 The prosecutor also exaggerated the effect of an attorney signing the lineup photo exhibit for identification purposes. The court in response to petitioner's objection simply instructed the jury that the "exhibit would speak for itself." That was adequate.
 
 
 30
 The last and most serious issue raised by petitioner, but to which again he did not object at trial, see id., was the prosecutor's comments drawing attention to the fact that petitioner did not testify. See Griffin v. California, 380 U.S. 609, 615 (1965) (holding that neither a prosecutor nor a judge may comment upon a criminal defendant's failure to testify). The prosecutor argued in pertinent part "... the law says that I can comment on what attorneys say in their opening statement. Now what I cannot comment upon [is] whether the defendants take the stand and I'm not gonna do that."
 
 
 31
 The state concedes that the prosecutor should not have made that comment, but we find that it was not so egregious an error as to warrant the issuance of the writ. See Spalla v. Foltz, 788 F.2d 400, 403-04 (6th Cir.1986). The prosecution did not pursue the matter by suggesting to the jury that it draw the adverse inference that the petitioner's not testifying was evidence of his guilt. It appears to have been a passing remark, not a principal argument. Petitioner requested a curative instruction and one was given, sufficiently reminding the jury that defendants "are not required to prove their innocence or do anything." The instruction continued by advising the jury that "[E]very defendant has the absolute right not to testify. When you decide the case, you must not consider the fact that the defendant did not testify. It must not affect your verdict in any way." This was sufficient to remedy whatever prejudicial effect the prosecutor's comment may have had.
 
 
 32
 The prosecutor made a mistake, but not one of constitutional dimensions in these circumstances justifying the issuance of the writ.[2] The statements were not so egregious as to make the entire trial fundamentally unfair, see Serra v. Michigan Dep't. of Corrections, 4 F.3d 1348, 1355 (6th Cir.1993).
 
 CONCLUSION
 
 33
 We do agree with the district court's comment that this crime was "a terrible offense, and, that in all likelihood (assuming a new trial) the [defendant] would be convicted again."
 
 
 34
 There can be no doubt that the errors, whether objected to at the time or not, in the context of this trial were not sufficient, even as a whole, and even giving petitioner the benefit of every doubt, to suggest the conviction of an innocent petitioner. That is what the district judge suggested in saying petitioner would no doubt be convicted again. We agree with that assessment.
 
 
 35
 Other related aspects of the trial raised by petitioner in the briefs we find to be without merit.
 
 
 36
 The prosecutor's arguments cannot serve as a model for future arguments, except to warn prosecutors of the need to use greater care lest the defendant be so unduly prejudiced as to require the trial to be done over again. Few jury trials are without all error, and there were no errors in this trial which in our view could justify the issuance of the writ of habeas corpus.
 
 
 37
 Therefore the issuance of the writ by the district court is vacated. The final action by the state courts of Michigan remains fully in effect affirming the conviction and sentencing of defendant.
 
 
 
 [1]
 The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [2]
 For comments about the defendant not testifying in contrast to this case, which do merit reversal, see Lent v. Wells, 861 F.2d 972, 975-77 (6th Cir.1988); Hearn v. Mintzes, 708 F.2d 1072, 1077 (6th Cir.1983)