986 F.2d 1424
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
William SIMPSON, Petitioner-Appellant,
v.
Michael V. NEAL and Neil F. Hartigan, Respondents-Appellees.
 No. 90-3361.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 3, 1993.*
Decided Feb. 24, 1993.
 
 Before COFFEY, FLAUM, and ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 An Illinois jury convicted William Simpson of the murder of William Drake, his wife's former lover. Simpson was sentenced to 32 years in prison for Drake's murder. All of Simpson's claims were ultimately rejected on appeal. People v. Simpson, 473 N.E.2d 350 (Ill.App.1984); People v. Simpson, No. 85-424, slip op. (Ill.App.1987). Simpson filed a petition for a writ of habeas corpus in federal district court. In a detailed opinion, the district court rejected all of Simpson's claims. United States ex rel. Simpson v. Neal, 746 F.Supp. 780 (N.D.Ill.1990). Simpson now appeals the denial of his petition.
 
 I.
 
 2
 Simpson first argues that the counsel appointed to represent him in his federal habeas proceeding rendered ineffective assistance by failing to present the issues as stated in his habeas petition. Petitioner's Br. 8. However, as the respondents point out, there is no right to counsel in a federal habeas proceeding. Wright v. West, 112 S.Ct. 2482, 2490 (1992) (plurality) ("We have held that the Constitution guarantees the right to counsel on a first direct appeal ... but that it guarantees no right to counsel on habeas."); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal as of right, and no further."). Without a right to counsel in a federal habeas proceeding, there can be no right to effective assistance of counsel in such a proceeding. Cf. Coleman v. Thompson, 111 S.Ct. 2546, 2566 (1991) (since there is no right to counsel in state post-conviction proceedings, a habeas petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings).
 
 
 3
 In his reply brief, Simpson makes no attempt to distinguish these cases. Instead, he maintains (without citation to authority) that his ineffective-assistance-of-counsel claim is not a ground for granting a writ of habeas corpus, but simply a ground for a remand with instructions to appoint new counsel. We find no merit in this attempted distinction. Finally, Simpson's reliance on the Canons of the Code of Professional Responsibility and Illinois law provide no basis on which to grant federal habeas relief, which is available only where the petitioner is held in state custody in violation of the Constitution or federal law. 28 U.S.C. § 2254(a).
 
 II.
 
 4
 Simpson challenges the admission into evidence of testimony by police that Simpson confessed to shooting Drake. He claims that his confession to authorities was not made voluntarily and thus should have been suppressed.
 
 
 5
 Based on information supplied by Simpson's wife and her mother, the police investigating Drake's murder wanted to question Simpson, but could not find him. They issued a stop order so that officers would know Simpson was wanted for questioning in case he was located. Simpson and a companion were arrested on December 28, 1980 at about 3:30 p.m. for shoplifting. Simpson identified himself falsely and gave an incorrect birthdate. At about 10 p.m., the police uncovered his true identity and the stop order. He was then transferred to another station for questioning about the murder.
 
 
 6
 At this point, Simpson and the police witnesses offered drastically different accounts about what happened next. Simpson claims that he was interrogated the whole night; that during his interrogation, he was suffering heroin withdrawal symptoms; and that the police refused his request to be taken to the hospital so that he could receive methadone treatment. He also claims that the police questioned him for hours before giving him his Miranda warnings, struck him during questioning, and refused his repeated requests for an attorney. 746 F.Supp. at 783-85. According to the police, they allowed Simpson to sleep before questioning him in the morning. They claim they gave Simpson his Miranda warnings before any questioning regarding the Drake murder, and that almost immediately thereafter, he voluntarily confessed. They deny ever striking him, and they deny that he ever requested an attorney or methadone treatment. Id. at 783 & 785.
 
 
 7
 Simpson raised the issue of the voluntariness of his confession in the trial court and on direct appeal. On this matter, the Illinois Appellate Court stated:
 
 
 8
 The trial court specifically found the testimony of [Simpson] and that of his companion to be incredible, and based upon the testimony of the State's witnesses, concluded that his inculpatory statements had been made voluntarily.
 
 
 9
 Simpson, 473 N.E.2d at 357. The Illinois Appellate Court found that the trial court's determination was not manifestly erroneous. Under 28 U.S.C. § 2254(d), federal habeas courts must accept state court factual findings unless one of eight enumerated exceptions apply. By stressing his own version of the facts concerning the interrogation, Simpson seems to argue that the state court findings are not fairly supported by the record. 28 U.S.C. § 2254(d)(8). However, the state trial court's findings were based on its assessment of the witnesses' credibility, and § 2254(d)(8) "gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434 (1983). Since only the state trial court observed the demeanor of the witnesses, we must accept its credibility determinations. In view of the testimony of the state's witnesses, we independently conclude, see Miller v. Fenton, 474 U.S. 104, 110 (1985), based on the totality of the circumstances, see Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973), that Simpson's confession was freely, intelligently, and voluntarily given.
 
 III.
 
 10
 Simpson claims that there was no probable cause to arrest him for Drake's murder at the time he was initially transferred for questioning regarding the murder. He claims that his confession was the fruit of an illegal arrest and thus should have been suppressed. Such a claim, however, is of no avail on federal habeas review when the state has provided a full and fair opportunity to litigate the issue of probable cause. Stone v. Powell, 428 U.S. 465, 474 (1976). Simpson does not claim that he was not afforded such an opportunity,[1] and it appears that he in fact received one at the pre-trial suppression hearing. See Supp.Tr. (2/22/81); see also Simpson, 473 U.S. at 356. We agree with the district court that Simpson's Fourth Amendment challenge must fail.
 
 IV.
 
 11
 Simpson argues that the trial court erred by allowing into evidence testimony concerning confidential marital communications between him and his wife. As indicated previously, federal habeas relief is available only where the petitioner is held in state custody in violation of federal law or the United States Constitution. 28 U.S.C. § 2254(a). Simpson, however, bases his entire argument on Illinois law (specifically Ill.Rev.Stat. ch. 38, p 155-1 (1979)) and not federal law.[2]
 
 
 12
 Is a violation of the state marital privilege so detrimental to a fair trial as to be a violation of due process? See Bell v. Duckworth, 861 F.2d 169, 170 (7th Cir.1988), cert. denied, 489 U.S. 1088 (1989). The answer becomes clear when one considers that the purpose of the marital privilege is to exclude evidence relevant evidence in order to protect the institution of marriage. In other words, where the privilege applies, its goal of promoting marital harmony has been deemed to outweigh the harm it causes to the search for truth. 7 John Wigmore, Evidence in Trials at Common Law § 2332 (McNaughton rev. ed. 1961). Clearly, recognition of the marital privilege is not necessary to afford due process. See Port v. Heard, 764 F.2d 423, 430 (5th Cir.1985) ("[T]he marital privilege has never been placed on a constitutional footing."); United States v. Lefkowitz, 618 F.2d 1313, 1319 (9th Cir.), cert. denied, 449 U.S. 824 (1980); United States v. Doe, 478 F.2d 194, 195 (1st Cir.1973).
 
 
 13
 Therefore, even if the trial court erred by admitting evidence concerning confidential marital communications, this furnishes Simpson with no basis for federal habeas relief.
 
 V.
 
 14
 Simpson maintains that he was denied due process because of
 
 
 15
 several alleged instances of prosecutorial misconduct.
 
 
 16
 Specifically, Simpson complains that the prosecutor (1)
 
 
 17
 inquired as to whether Simpson registered under an alias to
 
 
 18
 obtain methadone after Simpson had allegedly signed an
 
 
 19
 affidavit stating that he had not obtained methadone under
 
 
 20
 fraud, (2) questioned Simpson's wife and mother-in-law about
 
 
 21
 assaults he allegedly committed against his wife, and (3)
 
 
 22
 presented irrelevant evidence about the victim's grieving
 
 
 23
 family and mentioned it in closing argument. Petitioner's Br. 40-42.
 
 
 24
 Federal habeas corpus relief may be proper where the
 
 
 25
 prosecutor intentionally elicits inflammatory and
 
 
 26
 prejudicial testimony. Rose v. Duckworth, 769 F.2d 402, 405
 
 
 27
 (7th Cir.1985). In general, for such relief to be available,
 
 
 28
 prosecutorial misconduct that does not implicate a specific provision of the Bill of Rights must have been "so egregious that it deprived the defendant of a fair trial, thus making the resulting conviction a denial of due process."
 
 
 29
 Id. (quoting United States ex rel. Shaw v. De Robertis, 755 F.2d 1279, 1281 (7th Cir.1985)). In Rose we delineated four particular factors that aid in assessing allegations of prosecutorial misconduct:
 
 
 30
 1. Were the comments or actions of the prosecutor intended to reflect unfairly on the defendant's guilt or innocence or were they so prejudicial or inflammatory that they would "naturally and necessarily" imply that the defendant was guilty of the crime charged?
 
 
 31
 2. Were the remarks or actions isolated or extensive?
 
 
 32
 3. Was the evidence of guilt otherwise overwhelming?
 
 
 33
 4. What curative instructions were given, and when?
 
 
 34
 Id.
 
 
 35
 The prosecutor's questions regarding Simpson's possible use of an alias to obtain methadone did not relate to Simpson's guilt or innocence of Drake's murder, nor were they particularly inflammatory. As for the testimony concerning Simpson's assaults on his wife, we do not find any evidence of egregious misconduct when, aside from the first question regarding the incident, this testimony came out in spite of the prosecutor's attempts to keep the witness from relating this information. Trial Tr. 489-92. Finally, the evidence and comments about Drake's family did not reflect on Simpson's guilt or innocence, nor would they "naturally and necessarily" imply that the defendant was guilty of the crime charged.
 
 
 36
 Simpson insists that the alleged instances of prosecutorial misconduct were pervasive, yet he provides details of only a few instances he believes were inflammatory. The trial lasted over four days and included 13 witnesses. Neither the district court's review nor our own review of the trial transcript has uncovered pervasive attempts by the prosecutor to inject improper remarks or testimony into the trial. It appears that the alleged improprieties were indeed isolated.
 
 
 37
 We next consider whether the evidence was otherwise overwhelming. The evidence revealed that Simpson believed that Drake and his wife were having an affair. Trial Tr. 502. Thus he had a motive to kill Drake. Simpson made several remarks that could certainly be considered threatening. Trial Tr. 493, 505. Finally, Simpson confessed to killing Drake. The story he gave comported with the facts concerning Drake's murder. Simpson said that he shot Drake in the back after Drake turned away from Simpson, walked toward his van, and appeared to reach into it. Trial Tr. 378, 426. Drake was found with a bullet wound in his back. Trial Tr. 522. Based on this evidence, we agree with the Illinois Appellate Court's conclusion that the evidence against Simpson was overwhelming. See Simpson, 473 N.E.2d at 362.
 
 
 38
 Finally, the record reveals that the trial court gave curative instructions when appropriate following the incidents of which Simpson complains. As for the remarks about Simpson's assaults against his wife, curative instructions were given immediately after an objection was made. Trial Tr. 283-84, 490-492, 504-505. The same holds true for the prosecutor's remarks about the victim's family. Trial Tr. 159, 161 (no objection), 185 (same). With respect to the prosecutor's questions about possible fraud in obtaining methadone treatment, no instructions were necessary because the objection was sustained before the witness answered. Trial Tr. 657-58.
 
 
 39
 Having considered Simpson's concerns in light of the four factors identified in Rose, we find that the prosecutor's conduct was not so egregious as to constitute a denial of due process.
 
 VI.
 
 40
 Simpson claims that he was denied due process of law when the trial court refused to instruct the jury on the lesser included offense of voluntary manslaughter. He argues that the elements of voluntary manslaughter were present in this case, thus justifying the instruction.[3] In particular, he argues that (1) at the time of the shooting, he held an unreasonable belief that shooting Drake was necessary for self-defense when Drake reached into his van, and (2) he shot Drake in the heat of passion resulting from Drake's affair with Simpson's wife.
 
 
 41
 In the habeas context, our review of a trial court's decision not to give an instruction on a lesser included offense is limited to where the "failure to give the instruction could be said to have amounted to a fundamental miscarriage of justice." Nichols v. Gagnon, 710 F.2d 1267, 1269 (7th Cir.1983), cert. denied, 466 U.S. 940 (1984).[4] A fundamental miscarriage of justice occurs from a failure to tender an instruction when " 'credible evidence in the record would support a verdict based on [the omitted] instruction.' " Taylor v. Gilmore, 954 F.2d 441, 451 (7th Cir.) (quoting United States ex rel. Bacon v. DeRobertis, 728 F.2d 874, 875 (7th Cir.) (per curiam), cert. denied, 469 U.S. 840 (1984)), cert. granted, 113 S.Ct. 52 1992.
 
 
 42
 There is no evidence that Simpson had a belief, even an unreasonable belief, that he had to shoot Drake in self-defense. Assistant State's Attorney Dane Cleven testified about a conversation he had with Simpson concerning the shooting:
 
 
 43
 [Simpson] said when he got to 71st and Stewart he saw Drake and that he had a conversation on what would be the northwest corner of 71st and Stewart. He said during this conversation he talked about their relationships with Miss Berry. He said after a few minutes of conversation that Willie Drake then also turned around and turned his back to the Defendant and then walked over to his van to Willie Drake's van which was parked on the northeast corner of 71st and Stewart.
 
 
 44
 The Defendant told me that as Willie Drake was walking across Stewart that he the Defendant walked about half way across the street behind him.
 
 
 45
 Then Defendant then went on to say that when Willie Drake got up to his van to the driver's door he started to open the door and that Willie Drake then reached into the door and at that time the Defendant told me that he drew his pistol and fired at least once in the direction of Willie Drake.
 
 
 46
 Trial Tr. 425-26. Cleven also testified that Simpson told him that neither party used force during the conversation. Cleven specifically asked Simpson if Drake had threatened him in any way or threatened to use any force. Simpson told him no. Trial Tr. 427. Cleven then specifically asked Simpson whether Simpson had seen any weapons or any guns. Again Simpson said no. Trial Tr. 427-28. We find that no credible evidence exists that would support a voluntary manslaughter instruction based on a theory of self-defense.
 
 
 47
 Although Simpson characterized his conversation with Drake as an argument, Trial Tr. 427, there is no evidence that he killed Drake because of a sudden and intense passion resulting from a serious provocation. Under Illinois law, "[a]n instruction based on discovery-of-adultery provocation 'has generally been limited to instances where the parties are discovered in the act of adultery or immediately before or after such act, and the killing immediately follows such discovery.' " Simpson, 473 N.E.2d at 363 (quoting People v. Harris, 463 N.E.2d 1030, 1034 (Ill.App.1984)). This was not the situation in this case. In fact, Simpson had been convinced for over a week before Drake's murder that his wife had had an affair with Drake. Trial Tr. 299. Nor does the evidence satisfy the exception to the discovery-of-adultery provocation that applies when " 'the relevation of adultery was but one of a series of statements or circumstances found by the courts to be so provoking as to constitute an exception to the general rule in Illinois that words alone cannot constitute sufficient provocation to reduce a murder to voluntary manslaughter.' " Id.
 
 
 48
 We find no fundamental miscarriage of justice due to the trial court's refusal to give a voluntary manslaughter instruction in this case.
 
 VII.
 
 49
 For the foregoing reasons, the judgment of the district court denying Simpson's petition for a writ of habeas corpus is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Simpson filed a statement requesting oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied, and the appeal is submitted on the briefs and the record
 
 
 [1]
 In his reply brief, Simpson argues that he did not receive a full and fair opportunity to litigate all of his contentions. However, he makes this assertion as part of his argument concerning the allegedly improper use of confidential marital communications at his trial. Reply Br. 6. As we explain in the next section, that argument affords him no relief
 
 
 [2]
 We note that Federal Rule of Evidence 501 encompasses a federal marital communications privilege, but Rule 501 is not implicated in this case because Simpson was tried in state court, not federal court
 
 
 [3]
 The elements of voluntary manslaughter, now referred to as second degree murder in Illinois, see Ill.Pub.Act 84-1450, § 2, are set forth in Ill.Rev.Stat. ch. 38, p 9-2 (1991)
 
 
 [4]
 Beck v. Alabama, 447 U.S. 625 (1980), does not apply because the Court expressly reserved the applicability of its holding to noncapital cases. Id. at 638 n. 14. Although Simpson committed murder, he was not sentenced to death nor did the prosecutor seek death. Tr. 859. It is not clear whether Simpson was even subject to the death penalty